Wapsie Power & Light Company, Appellee, v. City of Tipton, Appellant.

**MUNICIPAL CORPORATIONS:** Franchises—Option to City to Acquire Plant—Scope. An option in a franchise authorizing the city to acquire and take over ''all the plants * * * and property'' of the franchise holder embraces an advantageous executory contract held by the franchise holder, even though such contract is not specifically mentioned in the proceedings instituted for the exercise of the option.

**MUNICIPAL CORPORATIONS:** Franchises—Unremunerative Rates. A municipality, in the operation of its municipally owned electric plant, may validly contract with a private utility located outside the municipality for electric energy to be furnished by such private utility *at a fixed price* and for a reasonable time, and may enforce such contract even though the rates *are not remunerative to the private utility company*. Having power to so contract, the municipality may validly acquire such a contract when it acquires its plant.

Evans and De Graff, JJ., dissent.

*Appeal from Cedar District Court.*—F. O. Ellison, Judge.

May 18, 1923.

Rehearing Denied April 4, 1924.

Action in equity, by a corporation engaged in the manufacture of electric current, to recover from a municipal corporation an amount claimed to be due for electric current furnished to said corporation, and to fix a rate for the current to be furnished in the future. The relief prayed for was granted, except an allowance of interest. The defendant appeals from the decree, and the plaintiff appeals from so much thereof as denies

interest for the full amount asked. The plaintiff is designated as the appellee, and the defendant as the appellant. The facts are stated in the opinion.—*Reversed.*

*J. C. France* and *Hamiel & Mather,* for appellant.

*Charles W. Kepler & Son, C. O. Boling,* and *Johnson, Donnelly & Lynch,* for appellee.

FAVILLE, J.—On or about January 5, 1900, certain individuals were granted a franchise by the appellant, to maintain and operate an electric light plant in the city of Tipton, for the purpose of supplying to the city and its citizens electric light for the period of twenty-five years from and after said date. By the terms of the ordinance granting said franchise, the rights therein conferred were granted to the individuals named in said ordinance and "their associates, successors and assigns, incorporated or otherwise." The said franchise ordinance provided that the city reserved the right to purchase, on January 1, 1911, or on January 1, 1916, "all the plants, works, machines, pipes, fixtures, buildings and material on hand and property in and belonging to the grantees, their associates, successors and assigns." After said franchise had been granted to the said individuals, a corporation was organized, known as the Tipton Light & Heating Company, which succeeded to all of the rights acquired by said individuals under said franchise. Said corporation thereafter operated an electric light plant in the appellant city, and furnished electric current to the inhabitants of said city, under said franchise. Sometime prior to June 1, 1913, the Tipton Light & Heating Company entered into a written contract with the appellee, whereby the appellee agreed to sell to the Tipton Light & Heating Company all current required by it in the transaction of its electric light, power, and heating business, for a period of ten years from and after June 1, 1913. The said contract provided that the Light & Heating Company should pay for said electric current three cents per kilowatt hour, measured at 224 volts, and also provided that either party to said contract could ask for a readjustment of rates or prices at the end of the first five-year period, provided that due notice

of an intention to ask for such readjustment had been given six months prior to the end of such period. The parties operated under said contract, the appellee furnishing electric current to the corporation, as provided by said contract, and the latter distributing the current to the inhabitants of the city.

As provided by the terms of the franchise granting the city an option to purchase and acquire the property and plant of the Light & Heating Company, on or about January 1, 1916, the city exercised said option, and purchased the plant and equipment of the said corporation, and proceeded thereafter to operate said plant as a municipally owned plant. The appellee, after the city had so taken over the plant of the corporation, continued to furnish electric current to the said city, as it had previously furnished the same to the corporation, under its said contract.

The city has paid to the appellee the contract price for all current that has been furnished to it by the appellee. It is the contention of the appellee that, by reason of changed economic conditions, the rates now provided in said contract are unremunerative and confiscatory, and appellee seeks, by this action, to recover from the appellant a fair, reasonable, remunerative, and compensatory rate for the electric current so furnished. It is stipulated that the rate fixed by the said contract ''has been, since December 1, 1918, at least 1.35 cents per kilowatt hour less than a fair, adequate, and reasonable rate.''

The court, by the decree, allowed the appellee to recover the difference between the contract rate which had been paid by the city and the rate so stipulated, as a fair and remunerative rate for the amount of current that had been furnished to the city from and after December 1, 1918, with interest thereon at 6 per cent from June 1, 1922, and provided that the rate so fixed should continue until otherwise changed by the parties, or by order of court, or other proper authority.

The question of the purchase of the said plant from the private corporation that owned the same was duly submitted to the electors of the said city at a proper election, and the purchase of said plant was duly authorized by said electors.

The questions presented on this appeal, upon a last analysis, resolve themselves into two propositions: First, did the city

legally purchase the rights of the private corporation in the contract which it had with the appellee; and, second, if the city did so acquire a right in said contract, can it, as a municipal corporation, enforce said contract against the appellee according to its terms, regardless of whether or not the rates fixed therein for electric current are compensatory and remunerative to the appellee?

I.  The original franchise ordinance gave to the appellant the option to purchase from the Light & Heating Company "all the plants, works, machines, pipes, fixtures, buildings and mate-

1. MUNICIPAL CORPORATIONS: franchises: option to city to acquire plant: scope.

rial on hand and property in and belonging to the grantees," and their assigns under said franchise. The city exercised this option, and purchased and took over all the property specified in the said ordinance. Among the things that the said corporation had "property in" and which "belonged to" it, was the contract in question. It was a very material portion of the assets of the corporation which the city was acquiring by its purchase. At that time, the private corporation within the city of Tipton was a going concern, holding its franchise from the city, subject to the right of the city to acquire all of its property by the option provided for in the ordinance.

The election submitted to the electors the following question: "Shall the city of Tipton purchase and operate an electric light and power plant?" The city served notice on the Light & Heating Company of its intention "to take over their entire works and property used in furnishing electric light to the city and its inhabitants under the franchise." Appraisers were appointed, as provided in the ordinance, "to fix the value of all property" of the corporation.

After the purchase had been so made, the appellee continued to furnish electric current to the city in precisely the same manner it had previously furnished it to the Light & Heating Company, and recognized the original contract as in full force and effect in the hands of the city, and accepted payment for electric current at the contract rate. The city likewise recognized the contract as in full force, and accepted and paid for the current furnished thereunder. It is obvious that the contract between appellee and the Light & Heating Company was one of

the valuable assets, and an important part of the "property" which the city was acquiring from said company. The purchase of the plant as it then existed, without the contract with the appellee and the right to secure the current which the contract required the appellee to furnish, would have been quite a futile proceeding on the part of the city. The city undertook to acquire all the "property" of the Light & Heating Company.

The term "property" is said to be *nomen generalissimum,* and to include everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal; everything that has an exchangeable value, or which goes to make up one's wealth or estate.

At this point, we hold that the appellant purchased all the interest of the Light & Heating Company in the contract which it had with the appellee, and, in so far as it legally could, acquired all the rights which the said company had under said contract.

II. It is further insisted that the specific question of purchasing the contract in question was not in terms submitted to the electors for their determination. The statute does not require that the question of acquiring an interest in a contract of the character of the one in question shall be submitted to a vote of the electors of the city. The question of purchasing the electric light plant was properly submitted. It was not necessary that the question of purchasing the contract in question, as a part of the property of said plant, should be submitted to the voters as a distinct and separate proposition. If the city had any authority under the statutes to acquire such a contract, it did not need to submit the question of its purchase to the electors, separate and apart from the question of acquiring the plant to which it belonged.

III. Assuming, as we must, that the appellant legally became a party to the contract with the appellee, whereby the city undertook to purchase from the said corporation electric current for sale to its inhabitants, we then meet the crucial question in the case, as to whether or not a contract between a municipality and a private corporation, whereby the latter undertakes to furnish to the municipality electric current at a fixed rate and

2. MUNICIPAL CORPORATIONS: franchises: unremunerative rates.

for a given term of years, is valid and binding upon the parties thereto.

It is to be noticed that the contract, as originally made, was a contract between two private corporations. The appellee, a private corporation, contracted with the Tipton Light & Heating Company, a private corporation, to sell to the latter electric current for an agreed price and for a fixed term of years. The appellant, a municipal corporation, legally acquired all the rights of one of the parties to said contract. Under the statute, Code Section 720, it had a right to "purchase * * * electric light or electric power plants, with all the necessary * * * poles, wires, burners, machinery, apparatus, and other requisites of said works or plants."

The question at this point is whether or not the power so conferred upon the municipality gave it a legal right to purchase, as part of the "apparatus and other requisites of said works or plant" a contract such as the one in question, for the furnishing of electric current to such plant by a private corporation.

It is proper to observe at this point that this case involves no question whatever of any franchise right. The powers of a municipality to deal with a franchise holder within the corporate limits are entirely separate and distinct from the question under consideration here. When the appellant purchased and took over the plant of the Light & Heating Company, the franchise from the city which said company had previously held, ceased to exist. The plant then became a municipally owned plant, and the appellant's rights thereafter are those which a municipality may exercise in regard to a municipally owned electric light plant.

Under said Section 720, cities and towns not only have the power to purchase electric plants, but also to "maintain and operate" the same.

Section 724 of the Code Supplement, 1913, is as follows:

"They shall have power, when operating such works or plants, and shall have the power to sell the products of such municipal heating plants, waterworks, gasworks or electric light or electric power plants, to any municipality, individual or private corporations outside of the city or town limits as well as to

individuals or corporations within its limits, and to erect in the public highway the necessary poles upon which to construct transmission lines, and to assess from time to time, in such manner as they shall deem equitable, upon each tenement or other place supplied with water, gas, heat, light or power, reasonable rents or rates fixed by ordinance, and to levy a tax, as hereafter provided, to pay or aid in paying the expenses of running, operating, renewing, extending and repairing such works or plants owned and operated by such city or town, and the interest on any bonds issued to pay all or any part of the cost of their construction.''

This section is apparently limited by its terms to municipally owned plants. Is there any limitation therein upon the power of the city to acquire (or for that matter to enter into) a contract with a private corporation located entirely outside said city, whereby said private corporation agrees to furnish electric current to said municipally owned plant at a fixed price and for a reasonable term of years? Cases that determine the powers of a municipality to grant a franchise to a public utility corporation, or to enter into a contract with such public utility corporation as a franchise holder for the furnishing of a commodity to the municipality or the inhabitants thereof, present an altogether different question from the one before us in this case. Many such cases have been before the courts. It is unnecessary that we review them in this opinion.

If it be conceded that a municipality, in granting a franchise to a public utility corporation to use the streets of the municipality for the purpose of rendering a public service to the inhabitants of the municipality, cannot enter into an unalterable contract for a fixed and definite rate to be paid by said inhabitants to such franchise holder, still the recognition of such a rule would not be determinative of the question before us. We are not dealing with a franchise holder, nor are we concerned in this case with any question as to rates that may be charged by such franchise holder to consumers under ordinance or by contract, nor as to the power of a municipality to fix and regulate *such* rates.

As we view it, such question is quite foreign to the proposition before us. The appellee is in no way a franchise holder.

It is not located within the corporate limits of the appellant city.
So far as the record shows,—and we assume it to be the fact,—
it delivers its electric current to the municipality at the corporate
limits, and is in no way within the territorial jurisdiction of the
city.   Its principal place of business is at Mount Vernon.   It
generates electric current at a distant point, and transmits and
delivers its product to the municipality.   It has no concern
whatever with what the city may do with said product.   The
manner in which the same shall be distributed and the rates which
the municipality shall charge its customers for the product are
matters of no concern whatever to the appellee.   It has no rights
or privileges and no obligations whatever within the municipal-
ity.   It is not subject to municipal control.   Its sole duty is to
produce the requisite amount of electric current, under its con-
tract, and deliver the same to the municipality, which owns the
distributing system and disposes of the current which it so pur-
chases, in such manner as the municipality sees fit.   Is there any
statute fixing the powers of the municipality in such a case?

We have frequently held that in this state municipal corpo-
rations have and can exercise only such powers as are expressly
granted to them by law, and such incidental ones as are neces-
sary to make such powers available, and are essential to the
declared objects and purposes of the corporation, and that the
granted powers are to be strictly construed.   *Clark, D. & Co.
v. City of Davenport,* 14 Iowa 494; *Hanger v. City of Des
Moines,* 52 Iowa 193; *Becker v. Keokuk Waterworks,* 79 Iowa
419; and many other similar cases.

The general powers of municipalities are enumerated in
Section 695 of the Code.   It is therein provided that cities and
towns "shall have the general powers and privileges granted,
and such others as are incident to municipal corporations of like
character, not inconsistent with the statutes of the state, * * *
and they may sue and be sued, contract and be contracted with."

We have recognized that there is a clear distinction between
the granting of a franchise to a corporation and the making of
a contract by the city for the purchase of any product, such as
water, gas, or lights, which the city may itself distribute to its
inhabitants.   In *State v. Des Moines City R. Co.,* 159 Iowa 259,
281, we said:

"In the granting of franchises for the use of its streets and highways by street railways, waterworks, electric light, and telephone or other public service companies, a city is not ordinarily acting in a private or proprietary capacity, or as a corporation for pecuniary profit, but as an instrumentality of government, acting as an agent for the state in a sovereign capacity. Its franchise is, in effect, a grant from the state, and by all the authorities is to be interpreted as such. In contracting with water companies for water for fire or other purposes, and with electric light companies for lighting its streets and in other such matters, it is acting in a private and proprietary capacity; and the rule for which counsel contend is generally held applicable to such cases. This distinction is pointed out in many cases, and is bottomed upon fundamental and axiomatic principles."

See, also, the recent case of *Incorporated Town of Sibley v. Ocheyedan Elec. Co.*, 194 Iowa 950, and cases cited therein.

Chapter 66 of the Acts of the Thirty-fifth General Assembly amended Section 720 of the Code of 1897. The title of this act is "to authorize cities and towns to enter into contracts to purchase heat, gas, and electric current and to sell the same," and said chapter inserts in said Section 720 the following provision:

"And they shall have power to enter into contracts with persons, corporations or municipalities for the purchase of heat, gas, water, and electric current for either light or power purposes, and shall have power to sell the same either to residents of such municipality, or to others, including corporations, and to erect and maintain the necessary transmission lines therefor either within or without the corporate limits, to the same extent, in the same manner, and under the same regulations, with the same power to establish rates and collect rents as is or hereafter may be provided by law for cities having municipally owned plants."

This act went into effect, by publication, on April 21, 1913, and it was, therefore, the law at the time the appellant acquired the plant in question from the Light & Heating Company, and took over the contract which said company had previously had with the appellee.

It therefore becomes a matter of the construction of the

language of this statute to ascertain what power, if any, is conferred upon a municipal corporation to purchase electric current from a private corporation outside such municipality and to distribute the same to its inhabitants. The statute expressly provides that cities and towns shall have power to enter into contracts with persons, corporations, or municipalities for the purchase of electric current for either light or power purposes. Language could scarcely be clearer or more explicit than this. There is no limitation whatsoever upon this power as to the rate that shall be paid by the municipality for electric current under such a contract. It is a broad and express grant of power to enter into contracts with persons, corporations, or municipalities for the purchase of electric current for either light or power purposes.

The statute also provides that cities and towns shall have power to sell such current, either to residents of the municipality or to others, including corporations, and power to establish rates and collect rents for the electric current so sold, in the same manner and under the same regulations as are provided by law for cities having municipally owned plants. That is to say, where a municipality enters into a contract for the purchase of electric current, without owning a municipal plant wherein such current is generated, it may sell and dispose of the electric current which it so buys, in the same manner as though it generated the same in a municipally owned plant.

We repeat that we are not concerned in this case in the least with any inquiry as to the rights of franchise holders within the corporate limits of a city or town, nor are we in any manner concerned as to the manner in which a municipality may *dispose* of electric current, either to its inhabitants or to those outside the corporation. Under the statute, a municipality is expressly granted the power to enter into a contract with a private corporation outside the municipality for the *purchase* of electric current, for the purpose of selling the same to residents of such municipality. The language of the statute expressly and explicitly confers this power. Our question, therefore, narrows itself to this single proposition: Is there any limitation in the statutes as to the terms upon which such purchase may be made?

It is the contention of the appellee that, even if the munici-

pality has the power to enter into a contract for the purchase of electric current from one outside the municipality, it has no power to enter into a contract that shall fix the price that the city shall pay for such current.

The power conferred by the statute above quoted is a broad and general power to enter into a contract for the purchase of electric current. If such power is limited as to the price that a municipality shall pay for current so purchased, such limitation must be found in some provision of the statute, or be necessarily implied therefrom. It is claimed that such limitation is found in Section 724, which is as follows:

"They shall have power, when operating such works or plants, to assess from time to time, in such manner as they shall deem equitable, upon each tenement or other place supplied with water, gas, light or power, reasonable rents or rates fixed by ordinance, and to levy a tax, as hereafter provided, to pay or aid in paying the expenses of running, operating and repairing such works or plants owned and operated by such city or town, and the interest on any bonds issued to pay all or any part of the cost of their construction."

Chapter 67 of the Acts of the Thirty-fifth General Assembly amended said Section 724 by inserting after the word "plants," in line two thereof, the following:

"and shall have the power to sell the products of such municipal heating plants, waterworks, gasworks or electric light or electric power plants, to any municipality, individual or private corporations outside of the city or town limits as well as to individuals or corporations within its limits, and to erect in the public highway the necessary poles upon which to construct transmission lines, and".

This section, as amended, has to do only with the *sale* of electric current and the rents and rates of such *sale*. It has no reference to and is no limitation whatever upon the power of the municipality to *purchase* electric current. The power to contract for the purchase of electric current is expressly authorized by Section 720, as amended by Chapter 66 of the Acts of the Thirty-fifth General Assembly.

Nor does Section 725 apply to this case. Said section, as amended (Code Supplement, 1913), is as follows:

"They shall have power to require every individual or private corporation operating such works or plant, subject to reasonable rules and regulations, to furnish any person applying therefor, along the line of its pipes, mains, wires, or other conduits, with gas, heat, water, light or power, and to supply said city or town with water for fire protection, and with gas, heat, water, light or power for other necessary public purposes, and to regulate and fix the rent or rate for water, gas, heat, light or power; to regulate and fix the rents or rates of water, gas, heat and electric light or power; to regulate and fix the charges for water meters, gas meters, electric light or power meters, or other device or means necessary for determining the consumption of water, gas, heat, electric light or power, and these powers shall not be abridged by ordinance, resolution or contract."

It is quite obvious that the powers conferred by Section 725 have to do with the rates and the service to be rendered to the inhabitants of the municipality, either by a franchise holder or by the municipality. *Incorporated Town of Sibley v. Ocheyedan Elec. Co.*, supra. But said section has no reference whatever to the regulation of rates under a contract of purchase between a municipality and a person or corporation selling electric current to the municipality for distribution by it to its consumers. The statutes providing for the granting of a franchise to establish and maintain a public utility of this character, within a corporation, are in no wise determinative of the question before us. The legislature had the power to expressly provide that a city shall have the power to "regulate and fix the rents or rates" to be charged by a franchise holder. It likewise had the power to provide by statute that a municipality shall have the power to "regulate and fix" the charges that should be made for any public service which is furnished by the corporation itself, either through a municipally owned plant or by the purchase and distribution of a commodity by the municipality. But the regulation of such matters by the statute cannot be construed to be a limitation upon the power of the corporation to do some other and different thing, not within the purview of such statutes. The regulation of the *sale* of a commodity by a public corporation is not, by inference, any regulation or limitation whatever upon its power to *purchase* such commodity.

Conceding, for the sake of the argument, that the statutes of this state expressly deny or limit the power of a municipality to enter into a contract with the holder of a franchise for unalterable rates, and that the statutes likewise deny or limit the power of the municipality to fix unalterable rates in the sale of such commodity by the municipality itself to its inhabitants and within its territorial limits, still we find in these statutes no limitation whatever upon the power of the municipality to contract for the *purchase* of such commodity with a private corporation outside the municipality. On the other hand, the express power is conferred by statute upon the municipality to enter into a contract for the purchase of electric current. The legislature has not seen fit to place a limitation upon the power of the municipality in entering into such a contract. It has expressly conferred the power by apt terms. A limitation is not to be implied. Of course, such a contract must be entered into in good faith, and without fraud. This is, however, a common-law and not a statutory limitation.

In the instant case, the appellee, a private corporation, entered into a contract with the Tipton Light & Heating Company, also a private corporation. Both parties had legal capacity to enter into such contract, and as between them, no question could be urged as to its validity. It was a duly executed and enforcible contract. Had the Tipton Light & Heating Company continued to exist and carry on its business, it could have enforced said contract, as against the appellee, according to its very terms, even though the contract turned out to be unprofitable, and even though the rate therein provided became unremunerative and confiscatory. So far as the appellee is concerned, it would be compelled to perform its contract or respond in damages at the instance of the original contractee, the Tipton Light & Heating Company. Courts will not relieve parties from the terms and provisions of a contract because, in the course of its performance, it may prove to be advantageous to one party and detrimental to the other. In *Southern Iowa Elec. Co. v. City of Chariton*, 255 U. S. 539, the court said:

"Where, however, the public service corporations and the governmental agencies dealing with them have power to contract as to rates, and exert that power by fixing by contract rates to

govern during a particular time, the enforcement of such rates is controlled by the obligation resulting from the contract, and therefore the question of whether such rates are confiscatory becomes immaterial. *Freeport Water Co. v. Freeport,* 180 U. U. 587, 593; *Detroit v. Detroit Citizens' Street R. Co.,* 184 U. S. 368; *Knoxville Water Co. v. Knoxville,* 189 U. S. 434, 437; *Cleveland v. Cleveland City R. Co.,* 194 U. S. 517; *Home Telephone Co. v. Los Angeles,* 211 U. S. 265, 273; *Minneapolis v. Minneapolis Street R. Co.,* 215 U. S. 417; *Columbus Railway, Power & Light Co. v. Columbus,* 249 U. S. 399.''

In the recent case of *City of Paducah v. Paducah R. Co.,* 43 Sup. Ct. Rep. 335, decided February 19, 1923, the Supreme Court of the United States said:

''If the franchise here amounts to a contract binding the company to the fare stated therein as a maximum, as claimed by the city, for the whole franchise term of twenty years, it cannot complain, and there is no ground for relief; and the question whether such rates are too low to give a reasonable return or sufficient is immaterial.''

The foregoing proposition is well established.

In this case, the contract could, therefore, have been enforced according to its terms, by the Tipton Light & Heating Company, the appellant's assignor. If the Tipton Light & Heating Company had sold and assigned said contract to a private individual, or to some other corporation, such assignee could likewise have enforced the contract according to its very terms, against the appellee. Why should not such contract likewise be enforcible in the hands of the appellant? Does the fact that the appellant is a municipality, instead of an individual or private corporation, relieve the appellee from performing the contract according to its terms and conditions? If so, it must be solely upon the ground that the appellant has no power to enter into such a contract.

In *Town of Williams v. Iowa Falls Elec. Co.,* 185 Iowa 493, in which the electric company was operating under a franchise ordinance, we said:

''The legislature can give power to a town to contract that rates fixed shall not be changed for a stated period; but authority to 'regulate and fix' rates does not authorize such a contract.

Power to make such a one can be given by unmistakable grant alone; and without such grant, no contract that rates shall be unalterable is valid.''

In said case, we were considering the section of the statute which gives the authority to ''regulate and fix'' rates charged to consumers, and held that Section 725 of the Code Supplement of 1913 expressly forbids the making of a contract fixing unalterable rates to the consumer.  See, also, *City of Tipton v. Tipton Lt. & Htg. Co.*, 176 Iowa 224; *Iowa R. & Lt. Co. v. Jones Auto Co.*, 182 Iowa 982.

But, as applied to the facts of this case, the legislature *has* given the power to the municipality to contract for the purchase of electric current.  The contract has nothing to do with rates for the sale of such current.  The power to make such a contract of purchase is expressly given by the statute, and the section of the statute granting authority to regulate and fix rates has no application whatever to the statute providing for the making of a contract for the *purchase* of electric current by the municipality.

*Town of Woodward v. Iowa R. & Lt. Co.*, 189 Iowa 518, and other similar cases, are not inconsistent with our holding in this case.  Such cases involve an attempt to fix by contract or ordinance an unalterable rate for the sale by a franchise holder to the inhabitants of a municipality.  As before pointed out, no such question is presented here.

The city could not, by ordinance or contract, have fixed an unalterable rate which the original franchise holder, the Light & Heating Company, might charge the inhabitants of the municipality.  But the city could not in any manner fix or regulate or interfere with the ''rate'' provided for by the contract between the appellee and said Light & Heating Company.  It stepped into the shoes of the Light & Heating Company by purchase of the contract, as it was expressly authorized by statute to do.  The power to regulate and fix the rates at which the municipality or a franchise holder may *sell* electric current to the inhabitants of a city or town is one thing; the power to enter into a valid contract to *purchase* such electric current is quite another thing.

When the legislature by express statutory enactment con-

ferred upon cities and towns the right to "contract for the purchase of electric current," it necessarily followed that such contract must be by the fixing of a price for the current so purchased.

We fail to find in the statutes any limitation upon the power so expressly and definitely conferred. The law would impose the limitations of reasonableness and good faith.

We hold, therefore, that the appellant had the right to purchase the outstanding contract between the appellee and the Tipton Light & Heating Company, and that, when it did so purchase said contract, it acquired all the rights of its assignor therein, and that appellee cannot be relieved from the terms and provisions of said contract because of the fact that the assignee thereof is a municipal corporation. The contract must be performed according to its terms.

IV. It is contended in argument that the appellee is a public service corporation, serving a number of municipalities in the state, and that, if it is compelled to furnish electric current to appellant at a loss under its contract, it must make up the deficit by an increase of rates to other municipalities.

We are not advised from the record whether it serves other municipalities under contract or as a franchise holder. But we have no power to level earnings for the appellee among the various municipalities which it serves. The legislature has not seen fit to vest such a power in a public utility commission in this state. The courts have no power to assume the functions of such a commission.

The trial court should have dismissed the appellee's petition at the close of the trial. The case will be reversed, with direction for the entry of a decree in accordance with this opinion.—*Reversed.*

PRESTON, C. J., WEAVER, STEVENS, and ARTHUR, JJ., concur.

EVANS and DE GRAFF, JJ., dissent.

EVANS, J. (dissenting). I think that the opinion is consistent with the majority holding in the case of *Incorporated Town of Sibley v. Ocheyedan Elec. Co.*, 194 Iowa 950. My objection to it is based upon the same ground as is the dissent in

the said case. This is, in substance, that the ultimate logic of the holding must result in the practical nullification of Section 725 of the Code, so far as the same forbids the abridgment by contract or otherwise of the continuing power of rate regulation by the existing city council. To say the least, it opens the door of easy evasion of such section.

DE GRAFF, J., joins in the dissent.