CORNHUSKER ELECTRIC COMPANY, APPELLEE, V. CITY OF FAIRBURY, APPELLANT.

278 N. W. 379

FILED MARCH 11, 1938. No. 30194.

*Frank M. Rain, Perry, Van Pelt & Marti* and *E. A. Wunder*, for appellant.

*Hartigan & Skultety*, contra.

Heard before GOSS, C. J., ROSE, DAY, PAINE and CARTER, JJ., and YEAGER, District Judge.

DAY, J.

This is a suit to enjoin the city of Fairbury from discontinuing the electric service furnished the appellee by its electric plant, and to find the rates charged "exorbitant, unreasonable, discriminatory, unfair and unlawful," and to require the city to fix a reasonable, fair and lawful rate for the service. The trial court found that the only issue involved is whether the rate charged is discriminatory, and found that "in consideration of the investment made for the respective lines and of the sale of electrical energy to large consumers" there is discrimination. The city appeals to this court from that finding.

In 1931 the Fairchild Clay Products Company operated a gravel pit six miles east of Fairbury, and the Weblemoe Sand and Gravel Company operated a pit two miles west of Fairbury. They both desired to operate with electric power, and each entered into contracts with the city of Fairbury, and each constructed its own line from the city limits to its own plant. The electricity furnished each was metered at the city limits. The line to the Weblemoe plant was later extended to the village of Gladstone, and was incorporated as the Fairbury-Gladstone Company. The village of Jansen had purchased electricity from the city of Fairbury, which was metered at the city limits, and carried over lines owned by the village. The Fairbury-Gladstone Company purchased this line and changed the name to that of the Cornhusker Electric Company. Subsequently this company extended its line from Jansen to Harbine and Ellis, and furnished electricity to these villages and farms along the line.

In 1934 and 1935 these contracts, both with the Fairchild company and the Cornhusker company, expired. In the meantime, a new act of the legislature authorized the municipality to build electric lines beyond the city limits. The city executed a new contract with the Fairchild company, whereby it purchased the line and agreed to furnish electricity metered at the Fairchild plant at the Fairbury power rate. This cost the city of Fairbury about $12,000 upon which the amortization is fixed at about $1,000 a year by engineers. There was substation expense and transformer loss, and the Fairchild company was relieved of its original investment and its taxes thereon.

When the Cornhusker contract expired, it demanded that its rate be adjusted to conform to the rate given the Fairchild plant, taking into account the difference in the city's investment. This the city refused to do, and threatened to terminate the electric service.

In the first place, let us make clear the fact that the appellee is not a competitor of the Fairchild company. The Weblemoe Sand and Gravel Company is a competitor of the Fairchild company. The Cornhusker Electric Company, in so far as this case is concerned, is an electric distribution company, and is not engaged in any other business. It sells current to the Weblemoe company. There is no similarity between the service furnished to the appellee and the Fairchild company.

The Fairchild company has a contract, while the Cornhusker company has none. One has been negotiated, but never consummated. The former uses the electricity for power to operate its plant, while the latter resells much of the current to others; the one has a meter at its plant, while the other has a meter at the city limits.

Paraphrasing the language of a leading case cited, we state that the legislature has not lodged the power to regulate rates in the railway commission, and the courts have no power to assume that function. *Wapsie Power & Light Co. v. City of Tipton*, 197 Ia. 996, 193 N. W. 643.

In a state where the railway commission is charged

with the duty of fixing rates charged for electricity, the court held that the function of making rates is legislative in character, and the courts may only interfere upon a clear showing that constitutional rights have been invaded. *San Joaquin Light & Power Corporation v. Railroad Commission,* 175 Cal. 74, 165 Pac. 16. There is no contention that the court should fix the rate here, and the question will not be discussed further; but see *City of Knoxville v. Knoxville Water Co.,* 212 U. S. 1.

But, says the appellee, the reasonableness of this rule is not involved, as the only question presented here is whether the Cornhusker company is being discriminated against. It relies upon *Public Service Co. v. Southern Power Co.,* 179 N. Car. 18, 101 S. E. 593. In that case reported in 12 A. L. R. 304, in the syllabus it was said: "The courts are not without power and procedure to prevent discrimination between consumers by a public service corporation." In the opinion of this case it was said: "The real point in this case is not whether the rates charged any one are exorbitant, nor is it sought to have the rates fixed by the courts. The sole object of this proceeding is to forbid discrimination between purchasers in like conditions." And: "The sole question in this case is not what is a reasonable rate, nor are the courts called upon to fix the rate (not in the first instance at least), but shall the defendant be required to sell its current to all alike, without discrimination in prices, when under like conditions."

Of course, it is contended that the city of Fairbury operating an electric plant, a business affected with a public interest, is obliged to serve the consumers impartially and without discrimination. It is held here however that, assuming only for the sake of argument that the court has the authority, the Cornhusker Electric Company and the Fairchild company are not purchasers of current under like conditions. The former purchases current for resale; the latter buys it for power to use in its plant. They do not purchase electricity under similar conditions. They are not customers in the same class. Even if the

court has authority to enjoin discrimination between customers of a municipal electric plant, one who purchases current for resale is not in a class with another who purchases current for power in his own plant.

Since there was no discrimination shown between the Cornhusker Electric Company and the Fairchild company, the judgment of the trial court was erroneous.

REVERSED AND DISMISSED.