IOWA RAILWAY & LIGHT COMPANY, Appellee, v. JONES AUTO COMPANY et al., Appellants.

MUNICIPAL CORPORATIONS: Public Utilities—Maximum Rate—
1  Meter Rental. A duly adopted, legal, maximum rate for heat, gas, electricity, or water, excludes the right to exact an additional charge as rent for meters.

MUNICIPAL CORPORATIONS: Public Utilities—Rates—Power of
2  City Council. A heat, gas, electric light or power, or water franchise, duly approved by the electors, is, at all times, under the control of the city council, *in so far as a reasonable upward or downward revision of the rates is concerned.* (Sec. 725, Code Supp., 1913.)

CONSTITUTIONAL LAW: Franchise—Obligations of Contracts—
3  Modification under Reserved Power. A contract in the form of a municipal franchise may not be said to be unconstitutionally "impaired" by a modification made under a power reserved in the law under which the franchise was granted. (See Sec. 725, Code Supp., 1913; Sec. 1619, Code, 1897.)

CONTRACTS: Consideration—Legally Authorized Acts—Modifica-
4  tion of Franchise. A valid statutory authorization furnishes ample consideration (if any is necessary) for acts done thereunder. So held where a city council made changes in the rates provided by a heating franchise. (See Sec. 725, Code Supp., 1913.)

MUNICIPAL CORPORATIONS: Public Utilities—Revision of Rates
5  —Exercise of Power. The power in a city council to revise the rates of a heating franchise may be exercised through the form of a so-called *amendment* to the elective franchise ordinance. (See Sec. 725, Code Supp., 1913.)

*Appeal from Dallas District Court.*—W. H. Fahey, Judge.

OCTOBER 25, 1917.

REHEARING DENIED FEBRUARY 13, 1918.

ACTION to recover for heat furnished. Defendant admitted amount of heat radiation furnished, but alleged that the price was excessive, and, by way of counterclaim, sought to recover previous alleged overcharges, and also amount paid for electric meter rentals. A demurrer to that portion of the counterclaim praying to recover meter rentals was sustained. A motion to strike an ordinance of the city of Perry, increasing the rate for heat radiation, and the portion of the reply setting up same as justification for the charges made, was overruled. Thereupon, the court certified that the questions should be passed on by the Supreme Court, and defendant appealed.—*Affirmed in part; reversed in part.*

*H. G. Giddings* and *S. Trevarthen,* for appellants.

*W. H. Winegar* and *John A. Reed,* for appellee.

LADD, J.—But two questions are presented: (1) Whether plaintiff may exact from its patrons rentals for meters measuring the electric current furnished for lighting or other purposes; and (2) whether, after the granting of a heating franchise fixing the price per foot of radiation, such price may be raised by the city council. These may be considered in this order.

I. The plaintiff is the assignee of the
1. MUNICIPAL Perry Electric Light, Heat & Power Com-
CORPORATIONS:
public utilities: pany, to which, about March 27, 1911, the
maximum
rate: meter city of Perry granted a franchise "to fur-
rental.
nish, sell and distribute electricity for light and power to the city of Perry, Iowa, and to the inhabitants thereof for said purposes to operate, establish, con-

struct, erect and maintain the necessary buildings, plants and works for the generation of said electricity and to lay, erect, construct and maintain the necessary wires, poles, cables and other apparatus necessary for the proper generation, conveyance and distribution of said electricity within said city of Perry as the boundaries thereof are now or hereafter may be." The only provisions therein relating to charges are the following: .

"Sec. 6. The price to be charged for electricity furnished private customers for lighting purposes under and by virtue of this grant shall not exceed one cent per hour for each sixteen candle power incandescent light, or the said Perry Electric Light, Power & Heating Company, may at its option install a system of meters and the rates charged to private consumers by meter shall not be to exceed the following:

1 to 5 k. w., 20 cents.

5 to 10 k. w., 1st 5 k. w. 20 cents; over, fifteen cents.

10 to 20 k. w., 1st 10 k. w. 17.5 cents; over, 10 cents.

20 to 25 k. w., 1st 10 k. w. 17.5 cents; second, 10 k. w. 10 cents; over, five cents.

25 to 40 k. w., 1st 10 k. w. 15 cents; next 20 k. w. 10 cents; over, 5 cents.

40 to 220 k. w., 1st 40 k. w. 10 cents; over, five cents.

220 to 300 k. w., 1st 40 k. w. 10 cents; next 180 k. w. 5 cents; over 300 k. w. 5 cents.

"Sec. 7. The rates to be charged for power service to private consumers shall be not to exceed the following:

|  |  |  |
|---|---|---|
| 1 to | 10 k. w. | 15 cents per k. w. |
| 10 to | 15 k. w. | 13.9 |
| 16 to | 60 k. w. | 8.3 |
| 61 to | 100 k. w. | 5.6 |
| 100 to | 200 k. w. | 5 |
| 201 to | 300 k. w. | $4\frac{3}{4}$ |
| 301 to | 400 k. w. | $4\frac{1}{2}$ |

```
401 to 500 k. w.......... 4¼
501 to 600 k. w.......... 4
601 to 700 k. w.......... 3¾
Over   700 k. w.......... 3½
```

"Sec. 8.   That as provided by law, the city council subject to reasonable rules and regulations shall have power to regulate and fix the rates or charges for electricity for both light and power furnished to the inhabitants of said city and shall have power to fix the charge for meters."

The latter added nothing to Section 725 of the Code Supplement, 1913, which declares that:

"They shall have the power to require every individual or private corporation operating such works or plant, subject to reasonable rules and regulations, to furnish any person applying therefor, along the line of its pipes, mains, wires, or other conduits, with gas, heat, water, light or power, and to supply said city or town with water for fire protection, and with gas, heat, water, light or power for other necessary public purposes, and to regulate and fix the rent or rate for water, gas, heat, light or power; to regulate and fix the rents or rates of water, gas, heat and electric light or power; to regulate and fix the charges for water meters, gas meters, electric light or power meters, or other device or means necessary for determining the consumption of water, gas, heat, electric light or power, and these powers shall not be abridged by ordinance, resolution or contract."

This statute authorizes the city council to fix the compensation for services to be rendered; but, in the absence of its exercise or of any contract, the company furnishing the service may fix and demand reasonable compensation for such service.   Here the rate is defined by the terms of the franchise granted, which is in the nature of a contract between the company and municipality; and the vital issue to be determined is whether, in agreeing that it was not

to exceed the compensation stated, meter rents were actually or impliedly excluded. That the city council may exact payment by measure and also by meter rentals does not require that both methods be adopted. This appears from *City of Tipton v. Tipton Light & Heating Co.*, 176 Iowa 224 where we held that an ordinance fixing a maximum charge per kilowatt of electricity and prohibiting any charge for use of meters was valid, and that thereunder the defendant might not collect rentals for the use of meters. The statute merely points out the modes of fixing the rates, and, were the council to act, either or both may be resorted to. Whether designated as so much per kilowatt, or so much for the use of the meter, or both, the payment is for the electricity furnished.

In *Louisville Gas Co. v. Dulaney & Alexander*, 100 Ky. 405 (36 L. R. A. 125), the charter of the company fixed the price at which gas would be furnished private consumers at a price not to exceed $1.25 per 1,000 cubic feet. Upon the refusal of the customer to pay a rental for the use of a meter of gas supplied, the company sought to turn off the gas, and was enjoined from so doing. In affirming the decree, the court declared:

"The gas meter is the property of the company, and is as necessary to the company in the measurement of its gas as are its works for its manufacture. At least, some process of measurement is as necessary; and, while other methods have been used, the meter, we believe, is regarded as the best known method, and is generally adopted. While the consumer may cause it to be inspected, and may test the accuracy of its work, his concern is only to ascertain and pay for what gas he has consumed, and he cannot be called on to pay for the apparatus used in its measurement, any more than he can be made to pay for the machinery used in its manufacture. He is required to pay the legal rate for the quantity consumed, and this quantity must be ascer-

tained by the company by some correct method. The company can only charge for the quantity it actually furnishes, and to ascertain what it furnishes, it must measure it—how, the consumer does not care, so it is measured correctly. The appellees, therefore, are entitled to have their gas furnished to them already measured; and for it, so measured, they can be made to pay at the price $1.35 per 1,000 feet, and no more. If the price of gas were unrestricted in the organic law of the corporation, the rule charging a higher price to small consumers might be upheld."

This opinion was followed in *Montgomery L. & W. P. Co. v. Watts,* 165 Ala. 370 (26 L. R. A. [N. S.] 1109), and is in harmony with the law as laid down by the text books: 4 McQuillin on Municipal Corporations, Section 1729; 3 Dillon on Municipal Corporations, Section 1320; Pond on Public Utilities, Section 452; Thornton on Oil & Gas (2d Ed.), Section 562; 2 Wyman on Public Service Corporations, Section 1251.

The last work perspicuously states the rule applicable:

"It is believed that a public service company ought to provide all the facilities necessary for rendering the service it undertakes, and upon its total investment therein base its general rates. In accordance with this theory, meter rent as charge for facilities furnished should never be charged. But many supply companies term the price which they require their customers to pay at all events 'meter rent,' when, upon the whole facts, it is really a minimum charge; and many courts, in permitting the charging of such meter rent, are really, on the facts, only justifying a minimum charge. It is therefore necessary to make the distinction between what is truly a meter rent and what is really a minimum charge very carefully. A dollar meter charge would be added to each bill regardless of consumption: the dollar minimum charge would not only be made if actual consumption was below that amount, while if it

was above, the actual measurement would alone be charged. Therefore, while an equipment charge is essentially wrong (and is indeed so regarded by most authorities which have had this distinction called to their attention), a minimum charge is essentially right. The one makes a charge for the provision of facilities as such, which is wrong; the other is designed to compensate for the essential costs of small service, which is right."

But for defining the maximum rate at not to exceed the price stated, a minimum charge, either for a limited amount of electricity furnished in a specified time, or a meter rental, where not to exceed a specified amount is furnished within such time, or a rental graded according to amount so furnished within a given time, would seem equitable; for where but a relatively small amount is furnished, the expense of maintaining, inspecting, and the like,—keeping in readiness to supply,—is greater proportionately than where large quantities are furnished. *State v. Sedalia Gas Light Co.*, 34 Mo. App. 501. But where the maximum price is fixed, as in the portion of the franchise quoted, there is no room for the minimum rate, either as measured by quantity or meter rent. In other words, having agreed upon a maximum price at which electricity will be furnished, such price may not be increased, through the addition of a meter rental or other device or subterfuge for increasing the compensation stipulated. See *City of Buffalo v. Buffalo Gas Co.*, 81 App. Div. (N. Y.) 505. We have discovered no case to the contrary, though *State v. Sedalia Gas Co.*, 34 Mo. App. 501, is sometimes cited as so holding; but there the price named was "not exceeding the rate charged in similarly situated places," and there was no showing of what the prices at such places were. The court erred in sustaining the demurrer to the second division of the counterclaim.

II. About May 9, 1900, the city of Perry granted to plaintiff's assignor a franchise "to construct, maintain, operate and repair a heating plant system of supplying heat to the city of Perry and citizens thereof and for that purpose to use the streets, alleys and public ground thereof by excavating and laying therein 'mains, pipes and other equipments necessary for such purpose." Section 5 of the ordinance declares:

2. MUNICIPAL CORPORATIONS: public utilities: rates: power of city council.

"The cost of the heat to consumers shall not exceed fifteen (15) cents per foot of radiation per annum and at no time during the operation of the plant under this ordinance shall the cost of heat to the consumers be more. than the average cost of heat by the same style in five cities in the state of Iowa having population approximately that of the city of Perry, Iowa, and furnishing an equal number of patrons."

On August 3, 1904, the city council enacted an ordinance known as No. 98, Section 1 of which reads:

"That Section 5 of Ordinance 89 of the city of Perry, Iowa, above referred to, be and same is hereby amended and made to read as follows, to wit: 'The cost of heat to consumer shall not exceed 20 cents per foot radiation per annum and at no time during the operation of the plant under this ordinance shall the cost of heat to the consumers be more than the average cost of heat by the same system in five cities of the state of Iowa having a population approximately that of the city of Perry and furnishing an equal number of patrons."

Exception is taken to the order overruling the motion to strike Section 1 of Ordinance 98 from the reply, it having been pleaded in justification of the 5 cents per feet radiation in excess of that authorized in Ordinance 89. The validity of said section is assailed,

3. CONSTITUTIONAL LAW: franchise: obligation of contracts: modification under reserved power.

for that, as is contended: (1) It was never approved by a vote of the electors of the city; (2) that, as Ordinance 89 is in the nature of a contract, Ordinance 89, increasing the rate, was without consideration, and (3) impaired the obligation of said contract; and (4) the enactment of Ordinance 98 was in excess of the city council's power, it being authorized only to renew the franchise granted, not to alter it.    Ordinance 89 was passed May 9, 1900, some time after Section 725 of the Code was amended so as to be applicable to heat, as appears from above section, as quoted.    The franchise granted by said ordinance was subject to the power reserved in the city council "to regulate and fix the rent or rate for  *  *  *  heat," and this might not be "abridged by ordinance, resolution or contract."    Or, as is often said, the statute necessarily is read into the franchise and forms a part of it.    Appellant expresses some doubt as to the meaning of the clause last quoted.    Its manifest purpose is to forestall any attempt, by ordinance or resolution of the city, or through any contract, to permanently or for any specified time fix the compensation for services rendered or material furnished.    Whatever may have been the ordinances of the city in granting a franchise, or independent thereof, or resolution of the city council, or contract with city or private parties, the power is continued in the city council to regulate and fix the rates of compensation thereafter to be exacted.    The power is a continuing one, and one city council may not tie up its successors by anything it may do in the matter covered by this statute. The granting of such a franchise is by the city council, even though its approval by the electors of the municipality is essential to its validity.    Section 776, Code.    And the rates for service therein specified are subject to subsequent adjustment as this may be deemed expedient or necessary by the city council.    That the state has power to regulate and define charges to be exacted by public utility corporations

is not questioned, nor is it doubted that such power may be delegated to municipal corporations.

See 3 Dillon on Municipal Corporations (5th Ed.), 1324 *et seq.* And what may be granted is not freed from legislative control, for Section 1619 of the Code declares that:

"The articles of incorporation, by-laws, rules and regulations of corporations hereafter organized under the provisions of this title, or whose organization may be adopted or amended hereunder, shall at all times be subject to legislative control, and may be at any time altered, abridged or set aside by law, and every franchise obtained, used or enjoyed by such corporation may be regulated, withheld, or be subject to conditions imposed upon the enjoyment thereof, whenever the general assembly shall deem necessary for the public good."

This section, with that previously quoted, disposes of the contention with reference to the impairment of the obligation contained in the so-called contract. *Sioux City Street R. Co. v. City of Sioux City,* 78 Iowa 742; *Sioux City Street R. Co. v. Sioux City,* 138 U. S. 98 (34 L. Ed. 898). In the last case it was said:

"No question can arise as to the impairment of the obligation of a contract, when the company accepted all of its corporate powers subject to the reserved power of the state to modify its charter and to impose additional burdens upon the enjoyment of its franchise. Under the act of March 15, 1884, it was made a condition to the enjoyment of its franchise by the company that, when the city should determine that the streets should be paved, the company should bear a certain portion of the cost thereof, and any prior contract between the company and the city in regard to paving was subject to the provisions of Section 1090 of the Code [now Section 1619]."

See also *Iowa Tel. Co. v. City of Keokuk,* 226 Fed. 82; *Stanislaus County v. San Joaquin & King's River C. & I. Co.,* 192 U. S. 201 (48 L. Ed. 406) ; *Arkadelphia Elec. Light*

*Co. v. City of Arkadelphia*, 99 Ark. 178 (137 S. W. 1093).

The principle has been tersely stated:

"An ordinance regulating rates of a public service company cannot be said to impair the obligation of the contract with the company, whether the ordinance granting the franchise to use the streets was passed after the enactment of a statute authorizing municipalities upon complaint filed to examine rates and determine whether they are reasonable, and fix such prices to be paid as they may deem to be a reasonable charge, since such statute will be read into every contract to which it relates, made since its enactment."

4. CONTRACTS : consideration : legally authorized acts : modification of franchise.

The authority to regulate and fix rates of compensation is not limited to reducing these. It includes the power to increase as well, and the city council may decrease or increase as may be necessary in determining those that shall be just and reasonable. Nor is it essential that change of rates by the city council shall rest upon some additional consideration. It is enough that the law has empowered that body to regulate and fix rates to be exacted, and the conditions of the franchise, with such authority reserved, are sufficient consideration, if any were necessary.

5. MUNICIPAL CORPORATIONS : public utilities : revision of rates : exercise of power.

At the time Ordinance 98 was enacted, Section 720 of the Code contained no provision for the amendment of the franchise, and counsel for appellant contend on that ground that it is invalid. But a readjustment of rates of compensation in no manner involves an amendment to the charter of the company, for that, as seen, through the statute, which must be read into the ordinance, granting the franchise authorizes the regulation and fixing of such rates by the city council at any time. It is one of the things the franchise authorizes to be done thereunder, and in so doing, the franchise is not

amended, but its terms carried out. The method of regulation and fixing rates is not prescribed, and this being so, it was competent for the city council to exercise in its own way the power conferred. *Merchants' Union Barb Wire Co. v. Chicago, B. & Q. R. Co.,* 70 Iowa 105; *Slocum v. City of North Platte,* 192 Fed. 252.

In the last case, it was said that:

"The general rule is that, where the charter of a municipal corporation authorizes its council or managing board to act upon a matter, but is silent as to the manner in which it shall so act, the authority may be exercised by resolution duly passed, or vote duly taken."

We see no valid reason for criticising the fixing of rate by amending a section of the franchise. It was the most direct and simple way of exercising the power specifically conferred by Section 725 of the Code Supplement, 1913, and in no manner impinged upon anything on which the approval of the electors was binding. Their approval was merely of the rates as temporarily settled, but with the distinct understanding that these might be increased or decreased or otherwise changed by the city council. We are of the opinion that the motion to strike the ordinance was rightly overruled. Each party will pay one half the costs.—*Reversed in part and affirmed in part.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.