Town of Woodward et al., Appellants, v. Iowa Railway & Light Company, Appellee.

MUNICIPAL CORPORATIONS: Utility Rates Not Subject of Con-
1   tract. Rates for gas, water, and electricity are not the subject
    of contract between a municipality and a private producer.
    (Sec. 725, Code Supp., 1913.)

MUNICIPAL CORPORATIONS: Presumption in re Ordinance
2   Rates. Ordinance rates for gas, water, and electricity are pre-
    sumptively reasonable; but a private producer may fix a higher
    rate, and, on injunction to restrain the enforcement of such
    higher rate, justify his conduct by showing that the ordinance
    rate is confiscatory, and that the new rate is no more than
    compensatory.

*Appeal from Dallas District Court.*—J. H. Applegate,
Judge.

July 6, 1920.

This is an appeal by the plaintiff from certain orders of the district court: First, dissolving a temporary injunction; and second, refusing, upon final hearing, to order a permanent injunction. The defendant is a public utility corporation, holding a franchise from the town of Woodward, plaintiff, for the maintenance and operation of its electric light plant in such town. It furnished the service for many years, at rates provided by ordinance. In 1918, it declared its inability to further furnish such service at ordinance rate, on the ground that such rate had become unreasonable and confiscatory. The town of Woodward, through its city council, brought this action to enjoin it from breaching the alleged contract, and, in effect, to compel specific performance. Trial being had, the district court refused the relief prayed, and the plaintiff has appealed.—*Affirmed.*

*S. Trevarthen* and *C. A. Robbins,* for appellants.

*Wm. Chamberlain, John A. Reed,* and *Ralph Maclean,* for appellee.

Evans, J.—I. The defendant's franchise in the town of Woodward was granted in June, 1912, by ordinance duly enacted by the city council and duly approved by vote of the electors, as required by Section 720 of the Code. Section 6 of the ordinance which granted the franchise specified the rates to be charged by the defendant to consumers. The term of the franchise was 25 years. The essence of plaintiff's contention is that the enactment of this ordinance (including the franchise and the rates and the approval of the same by the electors) and the practical acceptance of the same by the utility corporation, constituted a contract, binding as such both upon the town and upon the utility corporation. The defendant resists this contention, and likewise denies that there is any power conferred by statute upon the city council to enter into contract on the subject of rates. The issue at this point is the controlling one in the case. The question thus at issue is answered by Section 725 of the Code of 1897, which provides as follows:

1. MUNICIPAL CORPORATIONS: utility rates not subject of contract.

"Sec. 725. They shall have power to require every individual or private corporation operating such works or plant, subject to reasonable rules and regulations, to furnish any person applying therefor, along the line of its pipes, mains, wires, or other conduits, with gas, water, light or power, and to supply said city or town with water for fire protection, and with gas, water, light or power for other necessary public purposes, * * * and these powers shall not be abridged by ordinance, resolution or contract."

It will be noted from the foregoing that the legislative power to fix rates is conferred by this section upon the city council. The legislative power thus conferred is a continuing one, and may not be abridged or bartered away by

contract or otherwise. The same legislative power to enact
rates by ordinance is a continuing power to repeal or amend
in the same manner. The power thus conferred is subject
only to the constitutional limitation that the rates thus en-
acted shall not be confiscatory or unreasonable, but shall
be reasonably compensatory. There was a time in the his-
tory of our legislation when the right of contract as to rates
was conferred by statute upon the city council. A com-
parison of certain sections in the Code of 1873 with our
present Section 725 is instructive on that question. Sec-
tion 473 of the Code of 1873 was as follows:

"When the right to build and operate such works is
granted to private individuals or incorporated companies
by said cities and towns, they may make such grant to in-
ure for a term of not more than twenty-five years, and au-
thorize such individual or company to charge and collect
from each person supplied by them with water, such water
rent as may be agreed upon between said person or corpora-
tion so building said works, and said city or town; and such
cities or towns are authorized and empowered to enter into
a contract with the individual or company constructing said
works, to supply said city or town with water for fire pur-
poses, and for such other purposes as may be necessary for
the health and safety thereof, and to pay therefor such sum
or sums as may be agreed upon between said contracting
parties."

By Chapter 16, Acts of the Twenty-second General As-
sembly, this right of contract by the city council was taken
away from cities having a population of 7,000 or more, but
was still permitted to cities of smaller population. By the
revision and codification of 1897, the right of contract as to
rates for utilities of this character was entirely eliminated,
and the legislative power to regulate rates was conferred
upon the city council in all cases. The reason for the change
of method is obvious enough. Under the contract method,
the rights of the public were often bartered away, either
ignorantly or corruptly, and utility corporations became
empowered, through the contractual obligations, to enforce

extortionate rates. The net result of the progressive legislation is found in our present Section 725, whereby it is forbidden to any existing city council to bind the city to any rate for any future time. The power of regulating the rate is always in the present city council. It must be said, therefore, that the rates fixed by Section 6 of the ordinance hereinbefore referred to were not fixed by contract.

II.  The significance of our foregoing conclusion will be apparent, upon the further disclosure of the record. The defendant pleaded that the ordinance rates were confiscatory and unreasonable, and that, for that reason, the defendant declined to furnish the service at such rate, and that, for the same reason, they were not enforcible by the city. Upon this issue of fact, the defendant introduced testimony. This testimony was received by the trial court, subject to the plaintiff's objection to its competency and materiality. The argument in support of such objection is that, the defendant being bound by its contract obligation to give service for such rates, it is immaterial whether they were compensatory or not. The evidence introduced by the defendant established the fact that the rates were confiscatory and unreasonable. Such fact is admitted by the plaintiff, for the purpose of this appeal. In view of appellant's admission, no evidence has been incorporated in its abstract, and none was necessary. Under the record before us, we are not called upon to pass upon the question of fact, but to deem it established that the ordinance rates were confiscatory. The question put to us is, Was the evidence of such fact admissible, or should it have been rejected, as being immaterial? It is our judgment that the evidence was clearly material, and therefore admissible. The legislature could not confer upon the city council any greater legislative power than it possessed, itself. Such legislative power, whether retained by the legislature or conferred upon the city council, was and is, at all times, necessarily subject to the constitutional limitations. In the absence of a contractual obligation to perform, confiscatory

*2. Municipal Corporations: presumption in re ordinance rates.*

and unreasonable rates are concededly under constitutional inhibition.

The authorities cited and relied on by appellant are cases which have arisen in other states upon statutes conferring the right of contract, and all of them involved contractual obligations. We hold, therefore, that the evidence in question was admissible, and was, therefore, properly considered by the lower court.

III. It is further urged, in effect, that the ordinance rates are presumptively reasonable, and that such presumption continues until they are changed by a proper ordinance. That such rates are presumptively reasonable is to be conceded. The burden, therefore, was upon the utility corporation to show to the contrary. At this point, the evidence referred to in the foregoing division was admissible. The contention that the presumption of reasonable rates necessarily continues until new ordinance rates are adopted, cannot be sustained. To sustain such contention would be to hold that the utility corporation had no remedy, whatever the facts might be, if the city council refused to amend the rates. The constitutionality of the ordinance rates, like the constitutionality of a statute, is always open to challenge. Indeed, the only power conferred by the legislature upon the city council is the power to establish *reasonable* rates, and not unreasonable ones. To enact unreasonable rates, therefore, is to exceed, not only its constitutional power, but its statutory power as well. Without dwelling further upon the details of the argument, it is enough to say that the ground herein covered has been fully covered in our previous cases. *Cedar Rapids Gas Light Co. v. City of Cedar Rapids,* 144 Iowa 426; *City of Tipton v. Tipton Light & Heating Co.,* 176 Iowa 224; *Iowa Railway & Light Co. v. Jones Auto Co.,* 182 Iowa 982; *Selkirk v. Sioux City Gas & Electric Co.,* 188 Iowa 389.

Some question is raised in appellant's argument as to the effect upon the defendant's franchise of its repudiation of the ordinance rates. That question is in no manner presented upon the record before us. We have no occasion,

therefore, to pass upon it. We are not holding that the corporation can enforce an excess rate. For the reasons herein indicated, the decree of the lower court is—*Affirmed.*

WEAVER, C. J., PRESTON and SALINGER, JJ., concur.