INCORPORATED TOWN OF MAPLETON, Appellee, v. IOWA PUBLIC SERVICE COMPANY, Appellant.

No. 39587.

FEBRUARY 12, 1929.

REHEARING DENIED DECEMBER 13, 1929.

*Price & Burnquist,* for appellant.

*George A. Rice* and *C. E. Cooper,* for appellee.

EVANS, J.—The case is the first of its kind to come before us. The plaintiff is an incorporated town. The defendant has a franchise to operate its utility therein. In February, 1928, the city council adopted an ordinance known as No. 172, which fixed a graduated scale of rates to be charged by the utility company. This ordinance provided a rate of 13 cents per kilowatt for the first 25 units, with a graduated scale at lower rates for larger quantities. For the purpose of our discussion, we need only to consider the 13-cent rate. Nor need we set forth the details of the ordinance in other respects. The defendant published a schedule of rates which it proposed to put into effect contemporaneously with the ordinance schedule, and which was lower in some of its items than the ordinance rate. The rate thus published by the defendant for the first 25 units was 12 cents per kilowatt. The demand of the plaintiff is that such item in the defendant's schedule shall be put up to 13 cents, in obedience to the ordinance. The response of the defendant is that the ordinance is void, in that it is unauthorized by the statute and forbidden by the Constitution of the United States. The dispute is concentrated upon Section 6143, Code, 1927, and the proper interpretation thereof. This is as follows:

"6143. *Regulation of rates and service.* They shall have power to * * * and to regulate and fix the rent or rate for water, gas, heat, light, or power; to regulate and fix the rents or rates of water, gas, heat, and electric light or power; to regulate and fix the charges for water meters, gas meters, electric light or power meters, or other device or means necessary for determining the consumption of water, gas, heat, electric light or power, and these powers shall not be abridged by ordinance, resolution, or contract."

The defendant contends for an interpretation of this section to the effect that it fixes only a *maximum* rate, beyond which the utility company may not go, and that it does not for-

bid the exaction of a lower rate than is thus fixed by the ordinance. On the other hand, the plaintiff contends for a literal interpretation of the statute, to the effect that power is conferred upon the city council to regulate and *fix* the rates. The defendant's argument, elaborated a little further, is that the rate fixed by the ordinance is presumptively reasonable as a maximum rate; that, if 13 cents is a reasonable rate, then any rate below 13 cents is necessarily reasonable; that the only function of the city council is to fix a reasonable rate; that, if the defendant maintains a reasonable rate, it puts itself beyond the power of interference by the plaintiff. The counter-contention of the plaintiff is that only the 13-cent rate is presumptively reasonable, and that the burden is upon the defendant to show it to be unreasonable before it can assert a right to make another rate, be it higher or lower. This will indicate the general character of the contest. The anomaly of the situation is that we have never hitherto had before us a municipality as a litigant contending for an uplift in rates, nor a public utility contending for the right to reduce them. The briefs are voluminous, and have covered the whole field of rate regulation of public utilities and of other private property affected with a public use. But in all the volume of these citations in both briefs, no hint is contained of the respective attitude of the combatants as they appear herein. As argued by the defendant, in no case that has come before us has a public utility ever been challenged in its right to *lower* its rates. Nor, for that matter, has a municipality ever been challenged in its right to *increase* the rates. One observation is as good as the other, and both of them rest upon the same reason. On the face of the record, each party appears to be contending for the privilege of generosity toward the other. Apparently, also, neither party has a grievance. The municipality offers 13 cents, and the public utility responds that 12 cents will be quite enough. If we should stop here, the proceeding would invite a dismissal, for want of subject-matter of the litigation. And this presents in a nutshell the contention of the defendant. The reader of the foregoing will naturally query: What *is* the matter; where is the storm area; why the tempest? Here is the rub:

The incorporated town of Mapleton owns and operates a municipal plant, in its proprietary capacity. The result is that

this plaintiff, in its governmental capacity, has within it two public utilities. The question is, May they compete in rates? If so, to what extent? Does Section 6143 cease to operate in such a case? Has the city council any power of regulation, provided the battlefield is below the snow line? Has the city, in its governmental capacity, any interest to be subserved by stopping a rate war? If both competitors were of a like kind, and if the city were not the proprietor of one of them, would the city have any interest to subserve by this litigation? It is the contention of the defendant that it would not; that it is using its governmental robes as a cover for the protection of its proprietary interests; that the exercise of its power in such respect is mere favoritism, and in its own interest; that the defendant has a constitutional right to compete, and to challenge any competitor, be he man or municipality; and that there is no constitutional power in the city council or in the legislature to restrain it, if it keeps its prices below the 13-cent rate. Its further argument is that it has a right to manage its own property in accord with its own policies, subject only to a *maximum* rate; that Section 6143 should be so construed, in order to save its constitutionality.

The words "maximum" and "minimum" have been used in the briefs in a double or ambiguous sense, which we shall aim to avoid in this discussion. The ordinance under attack fixes a "top" rate of 13 cents for the first 25 units, and a "bottom" rate of $1.00 per month, to be charged where the customer uses less than $1.00 worth at the 13-cent rate. These two rates are referred to as the "maximum" and "minimum." Manifestly, the "bottom" rate may be a *"maximum,"* as well as a "minimum." Such a rate represents the "maximum" which may be charged to the "minimum" customer. Manifestly, also, the "top" rate may be both a "maximum" and a "minimum." Whether it is such or not in this case is the crux of the controversy. The defendant contends that the "top" rate is intended as a *maximum* only; whereas the plaintiff contends that it is both a maximum and a minimum. Both briefs apparently concede that the $1.00 rate is both minimum and maximum. It will be seen from the foregoing that the argument for the defendant in its various phases raises the following questions:

Does Section 6143 in terms empower the city council to fix

a "top" rate which shall be both maximum and minimum? If so, is it unconstitutional?

Does the defendant have the constitutional right to *compete* with the municipal plant and to lower its rates for that purpose?

Has the plaintiff town, in its governmental capacity, any right or interest to restrain competition between the two public utilities so far as the question of rates is concerned?

I. The fundamental proposition in the defendant's argument is that, subject to the right of the municipality to impose upon it a reasonable maximum rate, its constitutional right, as the owner of the property, to adopt its own policies and to enforce its own methods and to compete with its competitor and to win or lose thereby is absolute. The proposition is not wholly tenable. The owner of private property voluntarily devoted to public use necessarily surrenders some of his rights, and subjects himself to reasonable municipal regulation. The major right thus surrendered by him is that of fixing the price of his service or commodity. The Constitution protects him against confiscation by guaranteeing him that the price fixed by the municipality shall not be unreasonable. The defendant recognizes that the municipality may set a maximum limitation upon it. Ordinarily that would be the only point at which the respective interests of the public utility and its patrons could clash. But the defendant contends that it still retains its constitutional right of competition by lowering its rates. The argument at this point is that, if the two competitors were to agree together not to compete, such agreement would be void, as a fraud upon the public, and as creating a monopoly. When the owner of private property devotes it to the public use, as herein, he voluntarily retires from the field of competition, so far as the question of rates is concerned. It is the public, as patron, which is interested in free competition. A municipality is the representative of the public, *pro tanto*. When it exercises the power of fixing rates, it waives competition, and establishes a quasi monopoly. In the field of unregulated enterprise, competition tends to secure reasonable prices. Collusion between competitors creates secret monopoly. The evil of monopoly is that it tends to create unreasonable prices. A public utility becomes, by the common consent of owner and the public, a

monopoly. The evil which would ordinarily arise therefrom is avoided by public regulation. It does not result in unreasonable prices, because the public tribunal is charged with the duty of fixing reasonable ones. Ordinarily, in such a town as the plaintiff there is but one public utility. Nor is more than one usually needed; so there is no occasion or opportunity for competition. But it is argued that, when the public utility accepts the limitation of a maximum price, it must then be deemed at liberty, in the field of lower prices, to compete with its competitor, when it has one, and to do so by the cutting of rates; and that this is no concern of the municipality's. The presence of two public utilities in one little town is one of the anomalies of this case. Inasmuch as both are regulated, the municipality has no need of a competition of rates, in order to avoid a monopoly. Has the municipality any interest in restraining a rate war between the two utilities? A little town with two utility companies might be likened to the owner of a menagerie, whose wild animals are prone to fight if they come in contact. It is quite to the interest of the owner to prevent the contact. Moreover, the municipality which exercises the power over a public utility to fix its rates owes a corresponding duty to protect such utility against unfair competition by reason of such regulation. The railway legislation of the country gives universal recognition to this principle. Rates fixed under the supervision of the railroad commission must be adhered to by every carrier. The rate charged must be neither greater nor less than that fixed in the schedule. We think that the plaintiff may likewise enforce its ordinance rates.

II. In our foregoing division, we have ignored the fact that the defendant's competitor is the municipality itself, acting in its proprietary capacity. Does this fact give to the defendant a wider scope of action in the way of competition? It is argued for the defendant that a municipally owned utility plant is a private enterprise, and that it is subject to the same liabilities and limitations as any other public utility. Let this be granted. It operates under precisely the same regulation as does the defendant. Though the town in its governmental capacity could be deemed partial to its own child, yet it can extend no discriminating favors thereto. It can impose no rates which are not applicable to both plants. The municipal plant can

threaten the defendant with no competition in rates. It cannot even meet the defendant's cut in rates. It was acquired pursuant to statutory provisions, and by means of special taxation. Its ownership by the municipality is in the nature of a trusteeship. The exercise of governmental functions were requisite, in order to effect its acquisition and its operation. The operation must be under the restrictions of the statute. If the defendant should adopt a rate unreasonably low, and should be willing to lose money by reason thereof, the municipal plant would be powerless to meet such cut. It has no right to lose money. It has no right to depart from the ordinance rate. The ordinance rate is fixed as being reasonably compensatory, and as being necessary to the successful operation of the plant.

It appears from the record that this plant was established in 1925; that the franchise now owned by this defendant was then owned by its predecessor; that such franchise holder had been able to maintain rates, for a brief time, as high as 26 cents; that, at the time of putting in operation the municipal plant, the rate in effect was 16 cents. The defendant thereupon published a rate of 15 cents. This was later adopted as an ordinance rate; whereupon the defendant published a rate of 14 cents. In like manner, a 14-cent rate was adopted by ordinance, and the defendant published a rate of 13 cents. Ordinance No. 172 was then passed, and the rate of 13 cents was therein adopted, only to be followed by the publication of a rate of 12 cents by the defendant. It should be said for the defendant, however, that it covers a large territory in northern Iowa, and furnishes services to more than 100 towns; that it classifies them according to population, and fixes a uniform rate for each class; that the town of Mapleton properly belongs in the class to which the defendant extends a rate of 12 cents. The defendant argues, therefore, that it is guilty of no discrimination, and that it is simply extending to its Mapleton customers the same rate as it extends to all other customers in the same class. If the issue here were whether the defendant intends, at all events, to maintain a rate one cent below that of the municipal plant, the fact that it extended the same rate to other towns would be worthy of consideration. The fact remains, regardless of the ultimate intent of the defendant, that its maintenance of the reduced rate will force the other plant to adopt it, or to

close its doors. Moreover, the defendant frankly argues that the purpose of the lower rate is to induce additional customers. In the light of the evidence and of the argument, the fair inference is that the defendant intends to meet the ordinance rate, whether the present one or a lower one, with a competitive rate one cent lower. If this can lawfully be done, then a municipally owned plant must always be at the mercy of the owner of a privately owned plant, when such owner chooses to inaugurate a rate war and to take a loss therefrom. The exercise or existence of such a power is antagonistic to the whole scheme of public service by utility companies, and is inconsistent with the principle of rate regulation.

It seems plain enough that the municipal plant must charge the ordinance rate. Why should the statutory mandate speak otherwise to the defendant?

Under the literal terms of the statute (Section 6143), the rates are *fixed* for both plants, and each of them is bound to conform thereto. In order to sustain the defendant's position, it would be necessary to add qualification to the terms of the statute, to the effect that the rate fixed is a maximum one only. There can be no legitimate construction of the statute to that effect unless it be necessary to save its constitutionality. Such necessity is not present.

Our conclusions on the whole record may be summed up briefly. A public utility, operating under a franchise, has no constitutional right of *competition*. Moreover, a rate war is not necessarily competition. It may be, and usually is, a mere fight, which bodes nothing to the public but disorder and disorganization. The business of a public utility, under statutory regulation, becomes, by force of the statute, a legal monopoly. The power of statutory regulation is not affected, nor is the character of the business, as a monopoly, changed, by the fact that two franchises are granted and accepted by the respective companies, each of which tenders its service to the patrons. The advantage of a monopoly is its economy. Though there be a splitting of this benefit where the business is divided between two franchise holders, the evil of monopoly in unregulated enterprises is wholly avoided by statutory regulation. Though it be true that the town, in its governmental capacity, has a necessary interest in its own plant, and might, therefore, be

deemed disposed to discriminate against the defendant, in the exercise of its governmental functions, yet it has not done so. The ordinance is applicable alike to both franchise holders. The defendant does not claim that the ordinance threatens the confiscation of its property. Indeed, in its last analysis, it does not complain of the ordinance at all. Its fundamental complaint is of the literal terms of the statute. It asks that these terms be qualified and limited by judicial interpretation. The statute is the arbiter to which complaint is directed, and not the plaintiff town. The plaintiff, having exercised its statutory power to fix the rates, owes a corresponding duty to each franchise holder to enforce such rates uniformly and impartially against both. In doing so, it is performing its plain public duty. Nor has it any discretion to qualify the requirement of obedience which the statute makes upon the franchise holders. We hold that the statute, Section 6143, is definite in its terms, and free from ambiguity, and that it provides for a *fixed* rate. So construed, it operates equitably and consistently with all the other statutory regulation of property devoted to public uses, and it contravenes no constitutional right of the defendant's.

We find no authority cited in either brief which holds otherwise than herein, or which sustains the fundamental proposition of the defendant. We have said in the foregoing that the precise question has not hitherto been before us, nor has it been considered by any other court. This statement should be qualified to the extent that the Supreme Court of California has had before it, in two cases, a question closely akin. *Pinney & Boyle Co. v. Los Angeles Gas & Elec. Corp.*, 168 Cal. 12 (141 Pac. 620) ; *Economic Gas Co. v. City of Los Angeles*, 168 Cal. 448 (143 Pac. 717). In each of these cases, that court held that a rate fixed by the public service commission was binding, both as a maximum and a minimum.

III. It appears by Section 6 of Ordinance No. 172 that penal provisions are adopted which are very severe. The defendant contends for the invalidity of this section. It has not been enforced. The plaintiff claims nothing for it in argument. It is not essential to the validity of the rest of the ordinance. We need give it no further attention.

It is our conclusion that the defendant must obey the ordinance according to its terms, and charge the fixed rates there-

of. And this applies also to the requirement that a deposit of $5.00 be made by each customer, as security for the payment of his bills.

The decree of the district court is, accordingly,—*Affirmed.*

DE GRAFF, MORLING, KINDIG, and WAGNER, JJ., concur.

ALBERT, C. J., and FAVILLE, J., dissent.