Iowa-Nebraska Light & Power Company et al., Appellants, v.
City of Villisca et al., Appellees.

No. 42809.

May 14, 1935.

Rehearing Denied September 17, 1935.

R. J. Organ, and Cook & Cook, for appellants.

Stipp, Perry, Bannister & Starzinger, and Harold Bickford, for appellees.

KINTZINGER, J.—In 1932 the city of Villisca duly voted in favor of constructing a municipal electric light plant in that city, at a maximum cost of $150,000; under the provisions of chapter 312 of the Code of 1931 (section 6127 et seq.), and sections 6134-d1 to 6134-d7, inclusive, known as the Simmer Law. Pursuant to that election, the city advertised for bids to be submitted on proposed plans and specifications on May 15, 1934, as required by sections 6134-d4, d5. As a result of the advertisement, several bids were submitted at that time. After a consideration of such bids, they were all found to exceed the maximum cost authorized by the election.

Thereupon the city council by resolution amended the plans and specifications by eliminating a substantial part of the "proposed plans and specifications"; and without readvertising for new bids, on the amended plans, the city on June 6, 1934, let the contract to the Electric Equipment Company for the sum of $139,000. This action is brought to enjoin the carrying out of said contract on various grounds hereinafter considered. The lower court sustained a motion dismissing several counts of the petition, and entered a decree on the balance of the petition in favor of defendants. Plaintiffs appeal on grounds hereinafter considered.

· It was the purpose of the city to construct and establish an electric light plant pursuant to chapter 312 of the Code and in accordance with the provisions of sections 6134-d1 to 6134-d7, inclusive, known as the Simmer Law, providing for payment out of the earnings of the plant, without creating any general obligations on the part of the city. Sections 6134-d1 to 6134-d7, inclusive, were adopted as chapter 158, Acts 44th General Assembly, and are a part of chapter 312 of the Code of 1931, re-

lating to the acquisition of electric and other plants by municipalities.

■■■ I. The first question raised by appellants is that chapter 158, Acts 44th General Assembly, is unconstitutional, as being in violation of section 29, Art. III, of the Iowa Constitution, which provides as follows:

"Every act shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

An examination of the development of this provision shows that originally it read: "Every law shall embrace but one subject, which shall be expressed in the title." This provision was soon changed so that it now reads: "Every act shall embrace but one subject, and *matters properly connected therewith*; which subject shall be expressed in the title." It is obvious that the present provision containing the italicized words shows an intention on the part of the framers of the Constitution to give it a liberal construction, so as to embrace all matters reasonably connected with the title and which are not incongruous thereto. Such has been the uniform holdings of this court from an early date. State ex rel. Weir v. County Judge, 2 Iowa 280, loc. cit. 282 (1856); Cook v. Marshall County, 119 Iowa 384, 93 N. W. 372, 104 Am. St. Rep. 283; State v. Hutchinson Ice Cream Co., 168 Iowa 1, 147 N. W. 195, L. R. A. 1917D, 198; State v. Gibson, 189 Iowa 1212, 174 N. W. 34; Rural Independent District v. McCracken, 212 Iowa 1114, 233 N. W. 147; Beaner v. Lucas, 138 Iowa 215, 216, 112 N. W. 772; Porter v. Thomson, 22 Iowa 391; State v. Fairmont Cr. Co., 153 Iowa 702, 133 N. W. 895, 42 L. R. A. (N. S.) 821. In State ex rel. Weir v. County Judge, 2 Iowa 280, loc. cit. 282, this court said: "The intent of this provision * * * was to prevent the union in the same act of incongruous matter, and of objects having no connection, no relation. And with this it was designed to prevent surprise in legislation, by having matter of one nature embraced in a bill whose title expressed another. It is manifest, however, that there must be some limit to the division of matter into separate bills or acts. It cannot be held with reason that each thought or step toward the accomplishment of an end or object, should be embodied in a

separate act. * * * It is important to bear in mind that to declare an act unconstitutional and void, is the exercise of the highest power of the court, and is not to be resorted to, unless it becomes necessary. * * * And it is the duty of the courts to give such a construction to an act, if possible, as will avoid this necessity, and uphold the law.''

In State v. Gibson, 189 Iowa 1212, loc. cit. 1220, 174 N. W. 34, 37, we said:

''The subject of the bill need not be specifically and exactly expressed in the title. * * * The prohibition is against incongruity. The title must not contain matter utterly incongruous to the provisions of the body of the statute, and that is the limitation of the prohibition. * * * That only is prohibited which by no fair intendment can be considered as germane. * * * No matter how broadly the general subject is expressed in the title, the act is valid unless the statute contains matter utterly incongruous to that general subject. * * * It does not matter that the title does not reveal means and methods if those means and methods are reasonably adapted to secure the general objects set forth in the title, and the objects of the statute. * * * The Constitution is not violated if all the provisions relate to the one subject indicated in the title *and are parts of it, or incidental to it, or reasonably connected with it, or in some reasonable sense auxiliary to the subject of the statute.*'' (Italics ours.)

The rules hereinabove referred to have been so frequently declared by this court, so unanimously adhered to,. and the rea-- sons therefor so fully expressed that we deem it unnecessary to consider them further. It is the settled law that all matters reasonably connected with the subject named in the title and not incongruous thereto are properly included in the bill. If therefore the matters contained in this bill are germane, and reasonably connected with the subject named in the title and not incongruous thereto, it must be sustained (upheld).

The title of the act in question is as follows:

''An Act to amend section sixty-one hundred thirty-four (6134) of chapter three hundred twelve (312) of the code of Iowa, 1927, relating to public utility plants, *and to provide additional methods of paying for said plants,* improvements, or extensions, * * * and * * * for publication of notice * * *

to enter into such contracts for the purchase of plants; \* \* \* to provide for the submission and consideration of bids, plans, specifications and contracts for plants \* \* \* or equipment and the furnishing of electrical energy, heat, water and/or gas; to provide for fixing the terms, rates, and interest in said contracts; to provide for limiting of liability of municipalities thereon in such contracts."

The subjects embraced in the above-entitled act are contained in sections 6134-d1 to 6134-d7, inclusive, and, for the purpose of determining if they are reasonably connected or related thereto, we set them out as follows:

"6134-d1. Contract authorized. They shall have power to pay for any such plant, improvement or extension thereof out of the past earnings of the plant and/or out of the future earnings and/or may contract for the payment of all or part of the cost of such plant, improvement or extension out of the future earnings from such plant, and may secure such contract by the pledge of the property purchased and the net earnings of the plant.

"6134-d2. Nature and requirements of contract. Such contract shall not constitute a general obligation or be payable in any manner by taxation. Such contract shall specify the maximum rate that may be charged the consumers, including the municipality, and the city shall not increase or fix any rate beyond such maximum. Under no circumstances shall the city be in any manner liable by reason of the failure of the net earnings being sufficient for the payments provided in the contract. Such contract shall also specify the rate of interest to be charged.

"6134-d3. Interpretative clause—election requirement. Nothing contained in the last two preceding sections shall be construed as authorizing an establishment of a plant without an election as required by section 6131. And such proposition when submitted to an election shall state the maximum amount which may be expended for the establishment, construction, or acquisition of such plant.

"6134-d4. Notice of proposed contract—publication. Before any municipality shall enter into any such contract as provided in section 6134-d1, for the establishment of a plant, or for the extension or improvement of an existing plant, to cost five thousand dollars or more, the governing body proposing to make such contract shall give thirty days' notice of its intention to

adopt proposed plans and specifications and proposed form of contract therefor, by publication once each week for two consecutive weeks in some newspaper of general circulation in the municipality and also in some newspaper of general circulation in the state of Iowa, the first publication of which shall be at least thirty days prior to the time of hearing fixed in said notice.

"6134-d5. Contents of notice. Such notice shall state as nearly as practicable the extent of the work; the kind of materials for which bids will be received; when the work shall be done; the time when the proposals will be acted upon; and shall also provide for competitive bids for the furnishing of electrical energy, gas, water or heat.

"6134-d6. Execution of contract. Pursuant to said notice and at such time and place as is fixed therein the governing body shall consider the said plans and specifications, form of contract, and offers and propositions submitted in connection therewith, also any bids for the furnishing of electrical energy, gas, water, or heat, together with any objections thereto by an interested party, and at such hearing or any adjournment thereof, shall have the power to adopt such offer or offers, propositions, or bids, and enter into such contract or contracts, as they shall deem to be to the best interest of the municipality.

"6134-d7. Record of proceedings. The clerk or recorder of said municipality shall keep a written record of the proceedings which shall contain a record of the bids or propositions offered, the names of the persons submitting the same, the names of any person or persons appearing as objectors thereto, with a brief statement of such objections, and a record of all actions of the governing body with relation to such proceedings."

A comparison of the subjects embraced in the above-entitled act reveals that all of said subjects are definitely referred to and embraced in the title of the act. The act complained of is entitled inter alia, an amendment to section 6134 of chapter 312, relating to public utility plants, *and to provide additional methods of paying therefor*. The sections immediately preceding section 6134 authorize the purchase, establishment, and construction of such plants.

Under paragraph 2 of section 6134, cities had power to "issue bonds for the payment of the cost of establishing" such plants. One of the objects included in the title of the amend-

ment is *"to provide additional methods of paying for said plants."* Sections 6134-d1 to 6134-d7, inclusive, do authorize an additional method of payment, and indicate how such method is to be carried out; and that the contract price shall not be a general obligation upon the city, which shall "under no circumstances be liable by reason" of the insufficiency of the net earnings to pay the cost of the plant. Likewise a further examination will show that all other matters contained in the act are definitely referred to, connected with, or incidental to the subject named in the title of the act and are not incongruous thereto.

■■■ It is also claimed that the Simmer Law is invalid because it is more properly an amendment to other provisions of the Code. The test cannot, however, be measured by the fact that the subjects in the act may also be related or germane to some other prior existing act.

In Cook v. Marshall County, 119 Iowa 384, loc. cit. 399, 93 N. W. 372, 377, 104 Am. St. Rep. 283, we quote with approval from Johnson v. Harrison, 47 Minn. 575, 50 N. W. 923, 28 Am. St. Rep. 382, the following:

"Neither is it necessary that the connection or relationship should be logical. It is enough that the matters are connected with and related to a single subject in popular signification. * * * Neither is the fact important *that a law contains matters which might be and usually are contained in separate acts, or would be more logically classified as belonging to different subjects* [italics ours], provided only they are germane to the general subject of the act in which they are put. The legislature is not limited to the most logical and philosophical classification. * * * 'It is not intended to prohibit the uniting in one bill of any number of provisions having one general object fairly indicated by its title.' "

The Constitution is obeyed if all the provisions relate to one subject indicated in the title, or parts of it, incident to it, reasonably connected with it, or in some sense auxiliary to the object in view. Ritchie v. People, 155 Ill. 98, 40 N. E. 454, 29 L. R. A. 79, 46 Am. St. Rep. 315. We are constrained to hold that the title to the act in question fully and fairly meets the constitutional requirements, and we find no error in the lower court's ruling thereon.

■■■ II. Appellants also claim that the Simmer Law, and

the contract entered into thereunder, are invalid because of an unlawful interference with the rate-making powers of the cities, that such powers had already been given them under sections 6142 and 6143. Both of these sections are also contained in chapter 312 of the Code, but were enacted long prior to the adoption of the Simmer Law. It is also claimed that the cities have no power to bind future councils by contracting to fix rates for the future, because that is an attempt to cancel the power of succeeding councils to establish rates under sections 6142 and 6143. It is contended that under sections 6142 and 6143 the city's power to fix rates can "not be abridged by ordinance, resolution, or contract." Such was the law prior to the adoption of the "Simmer Law", and under it we held it was unlawful for a public utility or the city to charge more or less than the rate fixed by ordinance, unless such rate was shown to be confiscatory. Mapleton v. Iowa Pub. Ser. Co., 209 Iowa 400, 223 N. W. 476, 68 A. L. R. 993; Woodward v. Iowa Ry. & Light Co., 189 Iowa 518, 519, 178 N. W. 549; Iowa Ry. & Light Co. v. Jones Auto Co., 182 Iowa 982, 164 N. W. 780. These cases hold that the rates so fixed by ordinance are presumed to be reasonable. In the absence of other legislative authority, it would be unlawful for the city to enter into a contract fixing rates for a period of years extending beyond the life of any city council. It is contended by appellee, however, that the Simmer Law is also a legislative enactment, and under section 6134-d1 thereof cities are authorized to enter into a "contract for the payment * * * of such plant * * * out of the future earnings * * * and * * * secure such contract by the pledge of the property purchased and the net earnings." And that by section 6134-d2 "such contract shall specify the maximum rate that may be charged the consumers, * * * and the city shall not increase or fix any rate beyond such maximum." It is claimed that such provisions are inconsistent with sections 6142 and 6143 authorizing the city to fix rates. These two statutes and the "Simmer Law" are each legislative grants, and the Simmer Law, being the latest expression of the Legislature, can have no less validity than the former. Both are adopted by the only authority having power to delegate rate-making power to municipalities. If conflicting, it is the duty of the courts to harmonize them if possible.

Sections 6142 and 6143 give cities power to fix rates. Under the Simmer Law this power may still be exercised, providing *the*

*rates so fixed do not exceed the maximum rate* authorized by *section 6134-d2* and the contract executed thereunder. The latter is a legislative grant to all cities purchasing plants under its provisions. Unless restricted or prohibited by some constitutional provision, the power to add to, modify, or to take from municipalities certain rights rests entirely in the Legislature. City of Clinton v. Cedar Rapids & M. R. R. Co., 24 Iowa 455; Home Telephone & Telegraph Co. v. Los Angeles, 211 U. S. 265, 29 S. Ct. 50, 53 L. Ed. 176; City of Detroit v. Detroit Citizens' Railway Co., 184 U. S. 368, 22 S. Ct. 410, 46 L. Ed. 592; Herrick v. Cherokee Co., 199 Iowa 510, 202 N. W. 252; Slutts v. Dana, 138 Iowa 244, 115 N. W. 1115; Van Eaton v. Town of Sidney, 211 Iowa 986, loc. cit. 989, 231 N. W. 475, 71 A. L. R. 820.

In City of Clinton v. Cedar Rapids & M. R. R. Co., 24 Iowa 455, loc. cit. 475, this court through Justice Dillon said:

"The true view is this: Municipal corporations owe their origin to, and derive their powers and rights wholly from, the legislature. It breathes into them the breath of life, without which they cannot exist. As it creates, so it may destroy. If it may destroy, it may abridge and control. Unless there is some constitutional limitation on the right, the legislature might, by a single act, if we can suppose it capable of so great a folly and so great a wrong, sweep from existence all of the municipal corporations in the State, and the corporation could not prevent it. We know of no limitation on this right so far as the corporations themselves are concerned. They are, so to phrase it, the mere tenants at will of the legislature.

"This plenary power on the part of the legislature over public corporations, saving vested rights of property and of creditors, is a doctrine so well settled that it is unnecessary to refer to more than a few cases asserting it. Dartmouth College case [Dartmouth College v. Woodward], 4 Wheat. [518] 519, 4 L. Ed. 629; People v. Morris, 13 Wend. [N. Y.] 325; Purdy v. People, 4 Hill [N. Y.] 384; Charles River Bridge v. Warren Bridge, 11 Pet. 420, [9 L. Ed. 773]; People v. Kerr, supra [27 N. Y. 188]; 2 Kent's Com. 305."

Section 6134-d2 simply provides that the contract "shall specify *the maximum rate that may be charged* * * * and the city shall not increase or fix any rate beyond such maximum." This would not prevent the city from fixing a lower rate, under

section 6142, if it be reasonable; it still authorizes the municipality to fix the rate, provided it *does not exceed the maximum rate which the statute provides may be charged.* The contract entered into by the city of Villisca and the Electric Equipment Company also provides that "the maximum rates that *may be charged consumers * * * shall be as follows." Here the contract names a rate above which it cannot be established.* The contract does not actually fix the rates; under section 6142 that power is still in the city, provided it does not exceed the maximum rate authorized in the contract.

The Legislature, at all times, has power to authorize cities to contract for rates, and, if such power is in conflict with the power granted in a former statute (section 6142), it would, in effect, be a modification thereof.

"Rates not exceeding the maximum rates established by public authority are presumed to be reasonable and may be charged." 20 C. J. 336; Homestead Co. v. Des Moines El. Co. (C. C. A.), 248 F. 439, 12 A. L. R. 390; Union Dry Goods Co. v. Ga. Pub. Ser. Corp., 142 Ga. 841, 83 S. E. 946, L. R. A. 1916E, 358.

█▌█ It is also claimed that under the authority of the road bond case, State ex rel. Fletcher v. Executive Council, 207 Iowa 923, 223 N. W. 737, the city had no authority to enter into the contract in question, because it would restrict the powers of future city councils to fix different rates. The "road bond" case referred to does not support appellant's contention; the holding there is, that *one Legislature could not bind a future Legislature,* with reference to certain tax laws. The power of the Legislature is derived from the Constitution and thereunder one *Legislature* cannot bind a *succeeding Legislature;* while in the instant case there is no *constitutional provision* prohibiting the Legislature from empowering one city council from making a contract binding upon future councils. The Legislature has the undoubted right to permit city councils to enter into a contract like the one in question, and, if such power is in conflict with a previous power granted, it must be considered modified by the later grant.

It is our conclusion that the attack on the Simmer Law, as made in this action, cannot be sustained, and that the lower court was not in error in so holding.

█▌█ III. Appellants also contend that the court erred in refusing an injunction because there was, in fact, no competitive

bidding, as required by sections 6134-d4 and 6134-d5. These sections provide that "before any municipality shall enter into any such contract * * * for the establishment of a plant * * * to cost five thousand dollars or more," the city shall publish a "notice of its intention to adopt *proposed plans* and specifications, * * * thirty days prior to the time of hearing fixed in said notice." Such notice shall state "the extent of the work; the kind of materials for which bids will be received; when the work shall be done; the time when the proposals will be acted upon."

Section 6134-d6 provides for the consideration of the plans, specifications, and contract at the time and place stated in the notice. The time and place of the submission of the plans and specifications for the plant in question was fixed for May 15, 1934, in Villisca. At that time several proposed bids were submitted. They were not then acted on but referred to the city engineer for a report at a future meeting.

It is obvious from the foregoing provisions that the Legislature intended to require competitive bidding upon all public contracts of this nature costing over $5,000. Iowa Electric Light & Power Co. v. Town of Grand Junction, 216 Iowa 1301, 250 N. W. 136; McQuillin on Corporations (2d Ed.) vol. 3, 1309; Lee v. City of Ames, 199 Iowa 1342, 203 N. W. 790; Urbany v. Carroll, 176 Iowa 217, 157 N. W. 852; Rhodes v. Board of Public Works, 10 Colo. App. 99, 49 P. 430, loc. cit. 434; 65 A. L. R. 837.

In Iowa Electric Light & Power Co. v. Grand Junction, 216 Iowa 1301, 250 N. W. 136, 137, we said:

"This statute was undoubtedly enacted for the purpose of obtaining competitive bidding and to enable municipal corporations to secure the best bargain for the least money. Such a statute clearly required competitive bidding."

In Urbany v. Carroll, 176 Iowa 217, 157 N. W. 852, 854, we said:

"The authorities agreed that there must be a substantial compliance with the proposal to warrant the consideration of the bid, else bidding would not be on equal terms and the advantages of competition lost. *Unless the bid respond to the pro-*

*posal in all material respects it is not a bid at all, but a new proposition."* (Italics ours.)

Until the time of the submission of the bids on May 15, 1934, the Electric Equipment Company had been acting as city engineer for the city of Villisca, and, as such, had prepared all the proposed plans and specifications upon which bids were invited; the only notice published to bidders stated that the bids would be received the 15th of May, 1934. The maximum cost of the electric plant, authorized in the election, was $150,000.

All bids submitted at the council meeting of May 15, 1934, were referred to a new city engineer, appointed at that time on the recommendation of the Electric Equipment Company. After a consideration and computation, he reported that the bid of the Electric Equipment Company was low, in considering comparative values, although it was not lowest in amount. He also reported that none of the bids could be accepted because they all exceeded the maximum cost of $150,000, authorized by the election and none were accepted.

Thereupon the city on June 6, 1934, by resolution adopted an amendment to the proposed plans and specifications, whereby more than $11,000 worth of material was eliminated from the specifications to reduce the cost below the authorized maximum. That such elimination was a substantial alteration in the plans and specifications is shown by the following list of materials omitted therefrom:

20 pressed steel brightway units; 2,000 No. 8 nonmetallic 3,000-volt cable; 2 primary protective relays; 2 3-phase station type lightning arresters; 40 suspension lights; 40 30' class 4 poles; 100 ⅜" down guys; 100 cone anchors; 10 ½" down guys; 5 ⅝" down guys; 3,000' No. 6 T. B. W. P. wire; 130 5 amp. 115 V. 2 wire meters only; 15 5 amp. 230 V. 3 wire meters only; 25 15 amp. 230 V. 3 wire meters only; 120 class 4, 35' poles instead of class 3, 35' poles; 75 class 3 40' poles instead of class 2 40' poles; a reduction of 120 cubic yards of concrete foundation for two engines.

Thereupon, on June 6, 1934, by a computation of the city engineer, and negotiations with the Electric Equipment Company, the amount of that company's bid was by an elimination of a substantial amount of material reduced to $139,545, being a reduction of more than $11,000; and the contract was then let to

that company for that amount, without publishing a new notice for additional bids. The final letting was never, in fact, advertised. The adoption of the amendment to the proposed plans and specifications, with the large amount of material omitted, was in effect the adoption of new plans and specifications, upon which no notice to bidders had ever been published, as required by statute.

"Specifications cannot lawfully be altered after the bids have been made without a new advertisement giving all bidders an opportunity to bid thereon. The municipal authorities cannot enter into a contract with the lowest bidder containing substantial provisions beneficial to him, not included or contemplated in the terms, and specifications upon which bids were invited. The contract must be the contract offered to the lowest responsible bidders *by advertisement*." 19 R. C. L. 1071; 44 C. J. 106; Morse v. City of Boston, 253 Mass. 247, 148 N. E. 813; Wickwire v. City of Elkhart, 144 Ind. 305, 43 N. E. 216; Chippewa Bridge Co. v. Durand, 122 Wis. 85, 99 N. W. 603, loc. cit. 609, 106 Am. St. Rep. 931. In the latter case the court said:

"The contract made did not accord with any bid submitted, formally, or with the invitation for bids; and that it was made as the result of negotiations between the city officers and the Bridge Company, the price of the work and the terms of payment being materially changed from what *other bidders had the opportunity of considering*. A more flagrant disregard of the provisions of a city charter in respect to such matters it would be hard to find in any of the large number of cases reported in the books touching such question. That the contracts were utterly void and furnished no justification for turning over public money to the respondent Bridge Company * * * is too manifest to require further discussion."

In Wickwire v. Elkhart, 144 Ind. 305, 43 N. E. 216, loc. cit. 218, the court said:

"What we do hold is that to require of the bidders, or some of them, that their proposals shall be made without any knowledge of these elements of the contract, thus requiring them to make their calculations from to them the most unfavorable standpoint, and to permit others to bid and secure the contract with such knowledge, violates the purpose of the statute. It de-

stroys the essential features of fair competition, and enables one to bid either with facts before him which are withheld from others, or enables the council to award a contract to some favored bidder upon more favorable terms than others had reason to believe could be procured. * * * When his bid was accepted, striking out the features which departed from the *elements upon which all bids were asked and received,* if it did not destroy his bid it was so because he was concurring in the bid made new by the alteration. He thus had the advantage of two bids.''

We are constrained to hold that, in view of the substantial changes in the proposed plans and specifications, it became necessary to readvertise for bids. It will hardly do to say that the statutes have been complied with where the original plans and specifications have been substantially changed by the elimination of materials costing over $11,000.

As the first bids were above the maximum authorized, all of such bids were in effect rejected. The letting of a contract under the circumstances of this case would not be a substantial compliance with the statutes requiring notice to bidders—a readvertisement therefor. To permit one of the prospective bidders to prepare plans and specifications, and at the same time act as city engineer up until the very time of the submission of bids, would not be very conducive to free, open, and competitive bidding. Such a course might enable such a bidder to designedly prepare plans and specifications exceeding a maximum cost authorized by the election. Such biddings would practically result in no bids whatever. We do not imply that such a course was intentionally pursued in this case; nevertheless, the undisputed facts show the existence of a condition which resulted in the impossibility of accepting any of the bids offered on the original submission. The original plans and specifications were substantially altered by the amendment. It cannot be said that other and additional bids might not have been submitted on the revised plans if there had been a readvertisement for bids. To permit such a course without readvertising for further bids might, as it did in this case, effectually nullify the statute requiring competitive bidding.

We are therefore constrained to hold that the action of the lower court in permitting the contract to stand is erroneous. For these reasons, the decree of the lower court is reversed, and

the same is hereby remanded for a decree in harmony herewith.
—Reversed and remanded.

ANDERSON, C. J., and all Justices concur.