JOHN KEHE, Appellant, v. BLACKHAWK COUNTY, ET AL.,
Appellees.

**Taxation:** VOLUNTARY PAYMENT: RECOVERY. A taxpayer who appears
1  voluntarily and without protest pays taxes on omitted property in
accordance with a previous understanding with an agent of the
county employed to discover such taxes, cannot recover the same
under Code, section 1417, as having been erroneously or illegally
exacted or paid, either on the ground that the tax was not le-
gally assessed by the treasurer under Code, section 1374, or that
the same was barred by the statute.

**Unauthorized statement of agent.**  The statement of a tax ferret that
2  if others were not required to pay taxes for the same year plaintiff's
money would be refunded, was not binding upon the county nor did
it change the voluntary character of the payment.

**Notice of assessment:** PAYMENT: RECOVERY.  Notice to a taxpayer
3  that unless he appeared and showed cause why omitted property.
should not be assessed it would be listed and taxed, was neither
an assessment nor demand for payment, so that the same, after
voluntary payment, could be recovered as erroneously or illegally
exacted.

*Appeal from Blackhawk District Court.*— HON. F. C.
PLATT, Judge.

WEDNESDAY, NOVEMBER 16, 1904.

ACTION to recover back taxes paid to the defendant
county by plaintiff and his wife, which it is alleged were

erroneously assessed and exacted.    The trial court dismissed
the petition, and plaintiff appeals.— *Affirmed.*

*Edwards & Longley,* for appellant.

*Mears & Lovejoy,* for appellees.

DEEMER, C. J.— In December of the year 1901 the
county treasurer of Blackhawk county notified plaintiff and
his wife that the so-called " tax ferrets " employed by the
county had made a report showing that they were the own-
ers of moneys, loans, and credits not listed and assessed for
taxation for the years 1896 to 1901, inclusive, in various
amounts, and that, unless they appeared and showed cause
why the same should not be assessed, it would be listed and
assessed according to law.    It also appears that in January
of the year 1902 the county treasurer, in a book known as
" Record of Omitted Taxes," entered an assessment against
plaintiff and his wife for the years 1896 to 1901, inclusive.
This was done, however, from slips furnished the treasurer
by plaintiff and his wife, showing the amount of property
subject to taxation, and the taxes due thereon, as per an
agreement between them and the tax ferrets.    Plaintiff paid
the amount of the taxes shown by these slips to be due for
all the years in question, without objection or protest, and
before any entry was made upon the record of " omitted
taxes."    Indeed, it appears that, so far as this record is con-
cerned, it was a mere matter of bookkeeping, in order to
keep track of the taxes paid by those who had failed to list
their property for taxation.    Nothing was done by the coun-
ty treasurer, save to give the notices referred to, until after
plaintiff had appeared for himself and wife, presented the
slips showing the agreement with reference to the amount of
their taxes, and paid the amount so agreed upon.    After
all this had been done, the entry was made upon the
" omitted taxes " record book.    This action is to recover the
amount of taxes paid on moneys and credits for the year

1896, amounting to something like $200, and for a writ of mandamus commanding the defendant and its officers to refund to plaintiff the amount so paid.

The theory on which the suit seems to be based is that these taxes were erroneously and illegally assessed against plaintiff and his wife; that no assessment was ever made against them or their property for the year 1896, and no notice or demand made therefor until December of the year 1901. It is admitted that plaintiff and his wife were owners of moneys and credits, during the year 1896, to the amount shown by the tax ferrets' report, and that if they had listed the same they would have been required to pay in taxes for that year — at least as much as they eventually paid to the county treasurer. But it is contended that there was no legal assessment of taxes against them by the county treasurer, and that at the time they paid these taxes the county treasurer had no authority to assess, or to call for any taxes upon, property omitted from taxation for the year 1896, which was more than five years prior to the first Monday in April of the year 1901; in other words, that the remedies of the county for the recovery of these taxes were barred. There are two sections of the statute which must be considered in reaching a correct conclusion in this case. Section 1374 provides, in substance, that when property is withheld, or for any cause not listed for taxation and assessed, the county treasurer shall, when apprised thereof, at any time within five years from the date at which the assessment should have been made, give notice to the person in whose name it is proposed to assess the same, fixing a time and place where objection to such assessment may be made, and demand of the person by whom the same should have been listed the amount the property should have been taxed in each year the same was withheld; and, upon failure of the taxpayer to pay the same, he shall cause action to be brought therefor. Section 1417 provides, in effect, that the board of supervisors shall

1. TAXATION: voluntary payment; recovery.

direct the treasurer to refund to the taxpayer any tax, or portion thereof, found to have been erroneously or illegally exacted or paid, with interest and costs actually paid thereon.

Some claim is made that the taxes in question were paid under protest, but this is not sustained by the evidence. The most that can be said in this respect is that, when plaintiff went to the tax ferrets to adjust the matter of his taxes, they told him that if others did not have to pay taxes for the year 1896 his money would be refunded. This, of course, does not make a case of payment under protest. Construing section 1374 of the Code, we have held that a county treasurer cannot maintain an action thereunder for taxes on property omitted from taxation for more than five years from the time they should have been levied and assessed. *Siberling v. Croper*, 119 Iowa 420. But this was held in an action which was a direct appeal from an assessment by the county treasurer. In the same case it is held that, under the statute there construed, the county treasurer became the assessing officer, and that he was authorized to make an assessment after notice of all property withheld from taxation during the five-year period. The record shows that the plaintiff waived his right to a hearing before the county treasurer; that he agreed with the tax ferrets upon the amount of his tax; and that, pursuant to this agreement, he appeared before the county treasurer and paid the amount of his taxes so agreed upon, without objection or protest. It also appears that no assessment was in fact made by the county treasurer, unless the notice sent to plaintiff and his wife be held to be such, and that the entries made by the treasurer upon the county records were not reduced to writing until after the payments had been made, and then only as a matter of bookkeeping, to show the amount collected and from what source. Under this state of facts it is clear that plaintiff has no right to recover, unless it be under section 1417 of the Code, which provides for the refund of

taxes found to have been erroneously or illegally exacted or paid.

The payments were the result of a compromise, were voluntary, and without protest. Plaintiff and his wife at all times owed these taxes; their property was wrongfully withheld from taxation; but, by reason of the delay of the county official, there was no legal remedy for their collection. Is section 1417 broad enough to permit one who has so paid taxes a right of recovery? This is the pivotal question in the case, and it must be solved by construing the words "tax found to have been erroneously or illegally exacted or paid." This error or illegality manifestly has reference to some mistake or unauthorized action of the officials authorized to assess and levy taxes upon property, and not to error or mistake on the part of the taxpayer. *Dubuque Co. v. Supervisors*, 40 Iowa, 16. The county treasurer had the undoubted right, and it was his duty, to give plaintiff and his wife the notices he sent out, and it was plaintiff's duty to appear before the treasurer and make a showing as to why his property should not be assessed for any year or years. Instead of doing this, plaintiff went before the tax ferrets and agreed with them upon the amount of his taxes, took the ferrets' word that if others were not assessed for the year 1896 his money would be refunded, walked over to the county treasurer's office, presented his slips showing his agreed assessment, and voluntarily paid his taxes for the years 1896 to 1901, inclusive, on the property omitted from taxation during those years. Under such a state of facts it was clearly the duty of the county treasurer to take the money tendered, and to charge himself therewith as so much money collected on back taxes. To have done otherwise would have subjected the official to the sharpest criticism.

The notice given by the county treasurer was authorized, except, perhaps, that it included more than he was authorized to demand; but the payment was made pursuant to an agreement with the tax ferrets, in recognition of an

obligation to pay taxes on omitted property. There is no reason why one may not waive a statutory provision in his favor, unless his act in so doing offends against good morals or public policy; and we know of no reason why one may not, on behest of the promptings of conscience, voluntarily appear and pay taxes on his property, omitted from taxation, for any number of years he may see fit to acknowledge.

The statement made by the tax ferret to the plaintiff with reference to giving him his money back was not binding upon the county, and, even if it were, it does not destroy the voluntary character of plaintiff's payment. 2. UNAUTHORIZED STATEMENT OF AGENT. The obligation of a citizen to pay his taxes is a continuing one; and we have held that, on account of the nature of this obligation, retro-active legislation for the collection of back taxes is valid. *Galusha v. Wendt,* 114 Iowa, 597. This obligation is not discharged until payment is made, although, for various reasons, collection cannot be enforced. And we know of no reason why one may not discharge this obligation if he sees fit to do so, although it could not have been enforced by action in court. Before the amendment of section 1374 of the Code by Acts Twenty-eighth General Assembly, page 33, chapter 50, we had held that the demand by the county treasurer constituted an assessment; but since the section was amended, we have held in effect that a notice such as was sent in this case is not an assessment, but simply a notice to show cause why a proposed assessment should not be made. There was therefore no assessment in this case, either regular or irregular. The demand may have been for more than could have been collected, but not for more than plaintiff might recognize his obligation to pay; and, when he did voluntarily appear and pay, he did nothing more than discharge a just, although uncollectible obligation.

Moreover, the notice in the case at bar did not demand anything. It simply said that, unless plaintiff and his wife appeared and showed cause why the property should not

be assessed, it would be listed and assessed, and taxes extended, as by law provided. This notice was not, as we have already said, an assessment of the property, nor was it a demand. So that the taxes were not erroneously or illegally exacted. The payment was not illegally made, nor was it erroneous, as that term is used in the statute before us. True, plaintiff could not have been compelled to pay; but by mistake of law, or through a desire to avoid a lawsuit he voluntarily appeared and settled his supposed obligations to the county. The error, if any, was not on the part of the county officials, but of plaintiff himself, and the statute was clearly not intended to cover such a case.

**3. NOTICE OF ASSESSMENT: payment; recovery.**

Moreover, if we treat the notice as a demand, we find that it included taxes which were concededly due and collectible, and, if there was any error it was an over-assessment made in the exercise of lawful authority, and not an erroneous or illegal exaction as defined in section 1417 of the Code. *Harris v. Fremont County,* 63 Iowa, 639. It is only a tax which has been illegally or erroneously exacted which may be refunded. *Iowa Co. v. Woodbury County,* 64 Iowa, 212; *Dickey v. Polk County,* 58 Iowa, 287.

The error, to justify a refund, must be some irregularity connected with the assessment or levy of the taxes. There was nothing of that kind in this case, and therefore plaintiff is not entitled to recover.

The judgment is *affirmed.*