**SOUTH OTTUMWA BANCSHARES, INC., Appellee,**

v.

**FIRST INTERSTATE OF IOWA, INC., Appellant.**

No. 91–77.

Supreme Court of Iowa.

May 13, 1992.

W. Don Brittin, Jr., Hayward L. Draper, and James C. Wine of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for appellant.

Mark E. Schantz and Bruce J. Toenjes of Dickinson, Throckmorton, Parker, Mannheimer & Raife, P.C., Des Moines, for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, NEUMAN, and SNELL, JJ.

HARRIS, Justice.

This is a dispute over an option to purchase shares in a bank. The trial court found the option to be invalid. We reverse on First Interstate's appeal from the judgment finding the option invalid and remand the case for an order directing that the $250,000 payment, plus interest, be retained as compensation for avoiding the right to exercise it. We affirm the trial court's dismissal of SOBI's claim for damages.

Assets of the enterprises on both sides of the option are held by other entities so factual details become somewhat complex. Focal point of the controversy is South Ottumwa Savings Bank (Savings Bank); its shares are the subject of the option. South

Ottumwa Bancshares, Inc. (SOBI) owns a majority of the common shares of Savings Bank. Although SOBI shares were owned by a number of persons, it is to be noted that John Holtsinger and Patrick Curran were listed as SOBI's directors and incorporators when the corporation was formed in 1985. Holtsinger is a stock trader who owns a seat on the Chicago Mercantile Exchange. Curran is an Ottumwa attorney.

Holtsinger and Curran were general partners in Centar Limited Partnership (Centar). In 1984 Centar acquired 625,000 shares of common stock in First Interstate of Iowa, Inc. (First Interstate). Negotiations for a merger, which had been conducted between First Interstate and another banking institution, collapsed in December 1984. This caused the price of First Interstate to fall well below the price Centar had paid for it.

Centar and a Florida investment group together held in excess of 14.5% of First Interstate's common stock. The two groups, it is claimed, threatened to acquire a controlling interest in First Interstate and liquidate it unless First Interstate purchased their shares at a substantial premium over market price. It is apparent that First Interstate obtained the disputed option as a part of a resolution of this tension between Centar and First Interstate.

In January 1985 Curran filed the articles of incorporation for SOBI. On the same day an agreement was reached between Centar and First Interstate. Entitled "Stock Purchase and Option Agreement," it is the focal point of this dispute. Parties included Centar, First Interstate, SOBI, Holtsinger, Curran, and a number of others not involved in the appeal.

In the agreement First Interstate confirmed the purchase from Centar of the 625,000 shares of its stock that Centar had acquired. The agreed purchase price for the 625,000 shares, $2,156,250, was paid to Centar, the shares were transferred to First Interstate, and that part of the agreement is not in dispute.

The agreement also provided for the purchase of an option from SOBI that gave First Interstate the right to purchase shares of Savings Bank from SOBI. Consideration for the option was a $250,000 note which, among other things, was conditioned upon SOBI acquiring eighty percent of Savings Bank shares. Nothing in the agreement provided for monetary payment to SOBI for the option.

At the time SOBI, as a newly formed corporation, held no shares of Savings Bank stock. The agreement however provided that SOBI would use its best efforts to acquire the shares. Holtsinger had already signed a memorandum which set out proposed terms for the sale of not less than eighty percent of Savings Bank's stock to a corporation which he was to form.

It is apparent that SOBI was organized for the sole purpose of acquiring at least eighty percent of the common stock of Savings Bank. This acquisition was to take place in order to provide, by way of the option, for acquisition of the Savings Bank stock by First Interstate at the agreed price (approximately 1.3 times book value). Under the agreement the option, which could not be exercised for three years, was granted by SOBI, then newly organized, on common stock it had yet to acquire. In view of the likelihood of market value fluctuation during the three years before the option could be exercised, an escape was provided for SOBI. The agreement stated SOBI could avoid the option by paying $250,000 plus interest to First Interstate.

At the end of the three-year period the value of Savings Bank stock had obviously risen above the option price. At that time, on September 5, 1989, First Interstate exercised the option to acquire the shares which were now held by SOBI. SOBI filed a petition for declaratory judgment within the ten-day period during which SOBI could terminate the option by paying the $250,000.

After an unsuccessful attempt to stay the binding effect of the option, SOBI was allowed to pay the $250,000 plus interest into an account at First Interstate and bring this suit testing its challenge to the option's validity. SOBI advanced a number of theories for its challenge and, as mentioned, the trial court agreed with one of

them. The case is before us on First Interstate's appeal from a trial court ruling directing return of the option buy out.

I. In finding the option invalid, the trial court relied on Iowa Code section 496A.76 (1989),[1] which provides:

A sale, lease, exchange or other disposition of all, or substantially all, the property and assets, with or without the good will, of a corporation, if not made in the usual and regular course of its business, may be made upon such terms and conditions and for such consideration, which may consist in whole or in part of money or property, real or personal, including shares of any other corporation, domestic or foreign, as may be authorized in the following manner....

The statute then provides a plan for seeking, and requires the consent of, corporate shareholders. SOBI did not obtain its shareholders' permission to dispose of its assets in granting the option. As mentioned, because it was just being organized at the time, SOBI had no stockholders when the option was granted. The trial court nevertheless concluded that section 496A.76 applied.

◼ First Interstate challenges the applicability of section 496A.76 on a number of grounds. We pass what might be the strongest: that the sale of Savings Bank's stock was in the usual course of SOBI's business. *See Sutherland v. Kaonohi Ohana, Ltd.*, 776 F.2d 1425, 1427–28 (9th Cir.1985), *cert. denied*, 475 U.S. 1109, 106 S.Ct. 1517, 89 L.Ed.2d 916 (1986) (because corporation was organized only to sell its only asset, sale was in ordinary course of business). Because this contention was not urged in district court we cannot consider it on appeal.

◼ First Interstate did preserve error on another ground for its challenge. It is clear that noncompliance with section 496A.76 is a complaint available only to SOBI's shareholders, not to the corporation itself. *Rodgers v. Baughman*, 342 N.W.2d 801, 807 (Iowa 1983) (statute's primary purpose is to protect shareholders and "is not assertible by the corporation itself"). The trial court erred in finding the option invalid on the basis of section 496A.76.

◼ SOBI thinks the trial court's finding of invalidity can be supported on another ground: lack of consideration. The trial court thought there was consideration for the option and we agree. The stated consideration was $250,000. Although the note for this amount was not made payable directly to SOBI, that amount was furnished. SOBI, through its president John Holtsinger agreed to the payment of the consideration for the option to Centar.

As a part of a settlement reached between Holtsinger, Centar, and SOBI, Holtsinger and Centar confessed to judgment, admitting that they "obtained the consideration in the amount of $250,000 paid for an option granted by [SOBI] on stock owned by it...."

We conclude[2] that the trial court erred in finding the option invalid.

◼ II. SOBI's amended petition sought damages from First Interstate on theories of breach of fiduciary duties and fraud. These claims focus on conduct of SOBI's promoters in bringing pressure on First Interstate so as to advance the promoters personal—and conflicting—self interests. SOBI points especially to threats (to acquire controlling interest in and then to liquidate First Interstate) that led to granting the option. The trial court, ruling on First Interstate's motion for summary judgment, rejected these claims. The rejection is the subject of SOBI's cross-appeal.

The claims derive from SOBI's twin assertions that (1) First Interstate participated in this conduct, and (2) any resulting damages should inure to SOBI, rather than SOBI's shareholders (or perhaps First Interstate's shareholders). The assertions, on this record, will not support the claimed tort.

---

1. Repealed in 1989 and re-enacted, as amended, at Iowa Code § 490.1202 (1991).

2. Because it was not preserved in district court, we disregard SOBI's present contention that the option is unenforceable for policy reasons.

Although SOBI contends its factual allegations implicate First Interstate, we think the misconduct it alleges against its own promoters falls short of doing so. At most, First Interstate is accused of capitulating to Holtsinger's untoward pressure. It is alleged that First Interstate participated by acceding to the promoter's demand that the option be granted as camouflaged so as to deter shareholders from discovering that an inappropriate premium was being paid Centar for the 625,000 shares of common stock.

Assuming these factual assertions to be true, we cannot see how SOBI, the corporate entity established only to hold stock in Savings Bank as a part of the transaction,[3] could claim any resulting tort damages.

We suggest no opinion whether First Interstate's shareholders or SOBI's shareholders could urge such a claim. SOBI seeks to take advantage of a claim shareholders might pursue under the theory we explained in *Rowen v. LeMars Mutual Insurance Co.*, 282 N.W.2d 639 (Iowa 1979). No authorities are cited which suggest SOBI can do so.

Although it did so for different reasons, the trial court was correct in dismissing SOBI's tort claims.

III. We therefore reverse on First Interstate's appeal from the judgment finding the option invalid and remand the case for an order directing that the $250,000 payment, plus interest, be retained as costs to avoid the right to exercise it. We affirm the trial court's dismissal of SOBI's claim for damages.

REVERSED AND REMANDED ON THE APPEAL; AFFIRMED ON THE CROSS-APPEAL.

---

**3.** Various individual shareholders who later invested in SOBI might claim not to have known the details of the transaction, and therefore might dispute our characterization of the sole purpose in organizing SOBI. This is because the sole purpose of the organizers did not necessarily square with the purpose of later investors who are not parties to this suit. As to these corporate parties, however, there was no lack of knowledge of the transaction, or the sole purpose of organizing SOBI.