**GENERAL ELECTRIC COMPANY,**
Appellant,

v.

**IOWA STATE BOARD OF TAX REVIEW,** Appellee.

No. 91–837.

Supreme Court of Iowa.

Nov. 25, 1992.

Drew R. Tillotson, Burns Mossman, and Bruce W. Baker of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., and Harry M. Griger, Sp. Asst. Atty. Gen., for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and SNELL, JJ.

LARSON, Justice.

This is an appeal from a judgment of the district court affirming a decision of the Iowa Department of Revenue and Finance to deny an income tax refund to General

Electric (GE). We affirm the court of appeals and the district court.

In 1981, the Iowa Department of Revenue and Finance (Department) conducted a field audit of GE's income tax liability and issued an assessment for 1977 through 1979. GE filed a protest. The Department notified GE in 1982 that its protest would be held in abeyance pending the outcome of two pertinent tax cases then pending in the United States Supreme Court. In January 1984, following resolution of the Supreme Court cases, the Department notified GE that it was lifting its abeyance and would proceed to complete the audit.

In December 1985, an audit of 1983 through 1984, and a reaudit of 1977 through 1979 began. The Department wrote to GE regarding the results. The letter dealt with issues that GE initially had raised in its protest, including its deductions for federal taxes and several contributions. The Department referred to certain business income items and indicated that it would be agreeable to consider some of them as nonbusiness income. As a part of the Department's proposals, the approximately $5.3 million in audited tax liability might be reduced. In addition, $450,000 in penalty might be waived if an agreement on the business income issues could be reached.

On May 16, following receipt of additional information from GE, the Department wrote again. It stated that GE's federal tax deductions, as well as several contributions and dividends, were in the apportionable tax base and would not be negotiated. The Department noted that these items alone amounted to approximately $1.8 million in additional tax. The Department then presented a new offer of settlement. The new offer resulted in an audited liability for 1977 through 1984 of $3,094,541 in additional tax. It would waive all penalties, but the matter of interest was apparently to be negotiated separately.

At the request of GE, representatives of GE and the Department met to discuss settlement. GE acceded on the issues that the Department had indicated were not negotiable. The parties discussed the possibility of applying amnesty principles as GE requested. Apparently, for strategic reasons, GE asked that it not be required to make a formal application for amnesty.

On October 17, 1986, following this meeting and several telephone conferences, the Department agreed to resolve the tax matters provided payment of $3,366,767.82 was received by October 31. GE sent a check for that amount on October 28, and the Department's closing order was issued.

Almost a year after this settlement, our court decided *Kelly–Springfield Tire Co. v. Iowa State Board of Tax Review,* 414 N.W.2d 113 (Iowa 1987), which substantially changed the rules regarding application of Iowa's statute of limitations, Iowa Code § 422.25(1). Prior to *Kelly–Springfield,* it had been assumed that a pending Internal Revenue Service audit broadly extended the time for the Department to collect Iowa income taxes. Under *Kelly–Springfield,* the Iowa statute of limitations was extended by a federal audit only as to those issues involved in the federal audit that affected the income tax liability to the State of Iowa; a federal audit did not extend the Iowa statute of limitations for those federal adjustments that had no effect on Iowa income tax, which was the case here.

GE immediately filed an application for refund of the taxes and interest it had paid under the settlement. It claimed that, because *Kelly–Springfield* held that section 422.25(1) would have applied a three-year statute of limitations, GE could not have been required to pay the Iowa income tax when it did. Its claim for refund was based primarily on Iowa Code section 422.-73(2):

> If it appears that an amount of tax, penalty, or interest has been paid which was not due under division II, III or V of this chapter, then that amount shall be credited against any tax due on the books of the department by the person who made the excessive payment, or that amount shall be refunded to the person or with the person's approval, credited to tax to become due.

I. GE claims that its tax for 1977 through 1984 "was not due" under this

section because, under *Kelly–Springfield,* the Department could not have enforced the collection of the tax beyond the three-year period. The Department counters that a refund is not required by this section because, while the taxes would not have been collectible because of *Kelly–Springfield,* the tax was nevertheless "due." In any event, the parties had settled all claims between them.

GE argues that, in construing tax statutes, doubt should be resolved in favor of the taxpayer. *See American Home Prods. Corp. v. Iowa State Bd. of Tax Review,* 302 N.W.2d 140, 143 (Iowa 1981). However, as we noted in *American Home Products,* this is only one of the rules of construction. In addition:

(1) In considering legislative enactments [including tax statutes] we should avoid strained, impractical or absurd results.

(2) Ordinarily, the usual and ordinary meaning is to be given the language used but the manifest intent of the legislature will prevail over the literal import of the words used.

(3) Where language is clear and plain, there is no room for construction.

(4) We should look to the object to be accomplished and the evils and mischiefs sought to be remedied in reaching a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it.

(5) All parts of the enactment should be considered together and undue importance should not be given to any single or isolated portion.

(6) We give weight to the administrative interpretation of statutes, particularly when they are long-standing.

*Id.* at 142–43 (quoting *Iowa Nat'l Indus. Loan Co. v. Iowa State Dep't of Revenue,* 224 N.W.2d 437, 440 (Iowa 1974)).

GE concedes that the tax had been due at one time, and it does not argue that it "overpaid" them. It candidly admits that what it requests is a windfall. Because the parties did not anticipate the impact of *Kelly–Springfield,* GE had paid a tax obligation that the state could not enforce.

*Kehe v. Blackhawk County,* 125 Iowa 549, 101 N.W. 281 (1904), is analogous. In *Kehe,* the taxpayers paid property taxes for the years 1896 to 1901 pursuant to an agreement with "tax ferrets" employed by the county. Unknown to either party, the authority of the county treasurer to collect the taxes for 1896 had lapsed. Nevertheless, the county and the taxpayer compromised, and the 1896 taxes were paid. We stated the issue:

It is admitted that the [taxpayers] were owners of moneys and credits [subject to taxation], during the year 1896, to the amount shown by the tax ferrets' report, and that if they had listed the same they would have been required to pay in taxes for that year—at least as much as they eventually paid to the county treasurer. But it is contended that there was no legal assessment of taxes against them by the county treasurer, and that at the time they paid these taxes the county treasurer had no authority to assess, or to call for any taxes upon, property omitted from taxation for the year 1896, which was more than five years prior to the first Monday in April of the year 1901; in other words, that the remedies of the county for the recovery of these taxes were barred.

*Kehe,* 125 Iowa at 551, 101 N.W. at 282. We noted that

[t]he payments were the result of a compromise, were voluntary, and without protest. [The taxpayers] at all times owed these taxes; their property was wrongfully withheld from taxation; but, by reason of the delay of the county official, there was no legal remedy for their collection. Is [the refund section] broad enough to permit one who has so paid taxes a right of recovery? This is the pivotal question in the case. . . .

*Id.* at 553, 101 N.W. at 282.

We concluded that the taxpayers were not entitled to a refund because

the payment was made pursuant to an agreement with the tax ferrets, in recognition of an obligation to pay taxes on omitted property. There is no reason

why one may not waive a statutory provision in his favor, unless his act in so doing offends against good morals or public policy; and we know of no reason why one may not, on behest of the promptings of conscience, voluntarily appear and pay taxes on his property, omitted from taxation, for any number of years he may see fit to acknowledge.

*Id.* at 553–54, 101 N.W. at 283.

In the present case, the parties stipulated that

[b]oth [GE and the Department] believed that the Department could have timely issued a notice of assessment with respect to the tax liabilities in dispute when the payment on October 28, 1986, was made.

Prior to the Iowa Supreme Court's decision in *Kelly–Springfield*, General Electric and the Department did not discuss the application of the statute of limitations under Iowa Code section 422.-25(1) to General Electric's tax years 1980 through 1984.

In *American Acoustics & Plastering Co. v. Department of Revenue,* 107 Ill. App.3d 616, 62 Ill.Dec. 892, 437 N.E.2d 419 (1982), the Illinois court discussed a statute very similar to Iowa's section 422.73(2). The Illinois statute provided:

If it appears after claim therefor filed with the Department, that an amount of tax or penalty or interest has been paid which was not due under this Act, whether as a result of a mistake of fact or an error of law, except as hereinafter provided, then the Department shall issue a credit memorandum or refund to the person who made the erroneous payment or if that person has died or become incompetent, to his legal representative, as such.

Ill.Rev.Stat. ch. 120, ¶ 445 (1979).

In *American Acoustics,* the taxpayer claimed a refund because the taxes were barred by the three-year statute of limitations. The Illinois court rejected this argument, noting that the right to a refund is of statutory origin, and taxes may not be refunded in the absence of a statute if they are voluntarily, though erroneously, paid. It stated:

Generally, statutes of limitations affect the remedy by limiting the period within which the legal action may be brought or remedies enforced; they bar the right to sue for recovery but do not extinguish the underlying debt which remains as before.

*American Acoustics,* 107 Ill.App.3d at 622, 62 Ill.Dec. at 896–97, 437 N.E.2d at 423–24.[1] *See La Pine Scientific Co. v. Lenckos,* 95 Ill.App.3d 955, 51 Ill.Dec. 241, 420 N.E.2d 655 (1981) (assessments remain as debts, even though not enforceable; they had not been extinguished and are therefore "due and payable"); *Schulte v. Wageman,* 465 N.W.2d 285, 287 (Iowa 1991) (statutes of limitations do not destroy the cause of action, only the remedy).

We conclude that these taxes were "due" when paid by GE and that it is not entitled to a refund. In addition, we agree with the district court and the court of appeals that the parties settled this case and thereby foreclosed any claim for refund.

■■■■ II. The rule is that voluntary settlements will not be disturbed for ordinary mistakes of law. *Wright v. Scott,* 410 N.W.2d 247, 249 (Iowa 1987); *Bakke v. Bakke,* 242 Iowa 612, 618–19, 47 N.W.2d 813, 817 (1951). GE contends, however, this was not a case of a unilateral mistake; both parties were mistaken as to the application of the statute of limitations.

The consideration received by these parties was substantial. GE saved over $800,-000 in tax and approximately $1.2 million in interest as a result of the settlement. From the Department's standpoint, it received payment from GE and was able to close its files on the matter.

It is true that the parties did not consider the impact of *Kelly–Springfield.* However, as the agency found,

---

1. The Illinois court in *American Acoustics,* despite the language quoted above, held that the Illinois taxing authorities had actually induced a mistake of law by the taxpayer and therefore refunded the tax. 107 Ill.App.3d at 622–23, 62 Ill.Dec. at 897–98, 437 N.E.2d at 424–25.

[in order to obtain the $1.2 million interest reduction] as well as obtain a reduction of $806,053.70 in tax, GE knew it could not reserve the statute of limitations issue as grounds for obtaining a future refund of its October 28 payment. The evidence clearly shows that this settlement agreement was not contingent upon the outcome of *Kelly–Springfield* or any other issue affecting the Department's audit adjustments.

Substantial evidence supports this finding. There is, further, no evidence that the settlement was a mistake of law procured by fraud or misrepresentation, *Wright*, 410 N.W.2d at 249; *Bakke*, 242 Iowa at 619, 47 N.W.2d at 817. We agree with the district court and the court of appeals that the settlement precluded a claim for refund.

COURT OF APPEALS DECISION AND JUDGMENT OF DISTRICT COURT AFFIRMED.